Dan **KELLY** and Laura Hofstatter, Appellants,

v.

**GENERAL INTERIOR CONSTRUCTION, INC., Appellee.**

No. 14–07–00270–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 3, 2008.

Leymon L. Solomon, David C. Holmes, Houston, TX, for Appellants.

Ross A. Sears, Houston, TX, for Appellee.

Panel consists of Chief Justice HEDGES and Justices ANDERSON and FROST.

## MAJORITY OPINION

ADELE HEDGES, Chief Justice.

In this accelerated appeal, appellants, Dan Kelly and Laura Hofstatter, challenge the denial of their special appearance, asserting that the trial court did not have personal jurisdiction over them with respect to appellee's, General Interior Construction, Inc. ("General"), breach of contract and fraud claims and alleged violations under chapter 162 of the Texas Property Code. We affirm the trial court's order denying the special appearance as to General's chapter 162 and fraud claims, and reverse as to General's breach of contract claim.

## BACKGROUND

Appellants Dan Kelly and Laura Hofstatter (collectively the "Officers") are the sole shareholders and officers of DIVA Consulting, Inc. ("DIVA"), an Arizona-based company regularly acting as a general contractor on construction projects. Hofstatter is the President of DIVA, while Kelly is the Vice–President. Hofstatter and Kelly are both Arizona residents.

In 2004, DIVA entered into a construction contract for improvements to be performed on a hotel located in Texas (the "Hilton project"). DIVA then entered into numerous subcontract agreements with various Texas contractors, including General, a Texas company, to provide labor and materials on the Hilton project. After executing these agreements, General and the other Texas subcontractors began work on the project. During construction, Kelly made site trips to Texas to oversee the project. DIVA sent change orders to and received invoices from General and other Texas subcontractors for materials and work performed. The Officers frequently corresponded with General via email, facsimile, and telephone. Throughout the duration of the project, DIVA received funds from the property owner, Meristar Hospitality Corporation ("Meristar"), to pay for expenses related to the Hilton project. Initially, the Officers, on behalf of DIVA, sent payments to General; payments stopped when DIVA disputed the amounts owed to General and alleged that General's performance was substandard.

Meristar initiated litigation against both DIVA and General for various contract and tort claims. General counterclaimed against Meristar and filed a cross-claim against DIVA and third-party petition against the Officers for breach of contract, fraud, and violations under chapter 162 of the Texas Property Code (the "Texas Trust Fund Act"). The Officers filed a joint special appearance contesting the trial court's personal jurisdiction over them as to General's third-party claims. The trial court denied the special appearance, and this appeal ensued.

The Officers challenge the denial of their special appearance on three grounds. First, the Officers argue that they are not subject to personal jurisdiction as to General's breach of contract claim because they were not parties to the contract and were acting in their corporate capacity. In their second issue, the Officers contend that no jurisdiction exists as to General's chapter 162 claim because they are nonresidents of Texas and were acting in their corporate capacity. In their last issue, the

Officers argue that no jurisdiction exists as to General's fraud claim because there is no evidence that the Officers engaged in fraudulent conduct.

## STANDARD OF REVIEW

Whether a trial court has personal jurisdiction over a defendant is a question of law we review de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007). When the trial court does not issue findings of fact and conclusions of law with its special appearance ruling, as in this case, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002).

The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002). The nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations. *BMC Software*, 83 S.W.3d at 793. In considering the denial of a special appearance, we determine only the issue of jurisdiction, not liability. *Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 762 (Tex. App.–Waco 2007, no pet.). A Texas court may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has minimum contacts with Texas, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795. Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Moki Mac*, 221 S.W.3d at 575. There must be either minimum contacts sufficient to con-fer specific jurisdiction or continuous and systematic contacts sufficient to confer general jurisdiction. *Coleman*, 83 S.W.3d at 806–07.

When specific jurisdiction is asserted, as in this case, the following requirements must be met: (1) the defendant's contacts must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *Id.* at 806. In analyzing specific jurisdiction, we must focus on the relationship among the defendant, Texas, and the cause of action. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex.1991); *Barnhill*, 222 S.W.3d at 762. Furthermore, foreseeability is an important consideration, although not determinative, in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum. *BMC Software*, 83 S.W.3d at 795; *Huynh v. Nguyen*, 180 S.W.3d 608, 616 (Tex.App.–Houston [14th Dist.] 2005, no pet.).

## MINIMUM CONTACTS ANALYSIS

### Breach of Contract Claim

In the Officers' first issue, they contend that they are not subject to personal jurisdiction as to General's breach of contract claim because they were not parties to the contract and were acting in their corporate capacity. We agree. A corporate officer who signs a contract on behalf of his corporation is not a party to the contract, but acting in his corporate capacity. Such act does not constitute a contact for purposes of personal jurisdiction. *Wolf v. Summers–Wood, L.P.*, 214 S.W.3d 783, 792 (Tex.App.–Dallas 2007, no pet.) (concluding that no specific jurisdiction existed where officer contracted in corporate capacity); *Cerbone v. Farb*, 225 S.W.3d 764, 771–72 (Tex.App.–Houston

[14th Dist.] 2007, no pet.) (holding that the appellant did not make a purposeful contact with forum because he was not a party to the settlement agreement). Because Hofstatter signed the contract in her corporate capacity, her act was not a contact or purposeful act to impose personal jurisdiction. *See Wolf*, 214 S.W.3d at 792; *Cerbone*, 225 S.W.3d at 771–72.[1] The trial court does not have jurisdiction over her with respect to General's breach of contract claim.[2] Likewise, Kelly is not subject to personal jurisdiction on the basis of the corporate contract. *See Wolf*, 214 S.W.3d at 792; *Cerbone*, 225 S.W.3d at 771–72. Accordingly, the trial court lacked personal jurisdiction over the Officers with respect to the breach of contract claim alleged by General. We sustain appellants' first issue.[3]

## Chapter 162 Claim

In their second issue, the Officers challenge personal jurisdiction as to General's chapter 162 claim under the Texas Trust Fund Act. In assessing personal jurisdiction, we must focus on the relationship among the Officers, Texas, and the chapter 162 cause of action. *See Guardian Royal*, 815 S.W.2d at 228; *Barnhill*, 222 S.W.3d at 762. The Trust Fund Act imposes fiduciary responsibilities on contractors to ensure that Texas subcontractors, mechanics, and materialmen are paid

1. The dissent alleges that our analysis conflicts with *Cerbone*. *Cerbone*, however, supports our reasoning and conclusion that Hofstatter did not make a purposeful contact by contracting in her corporate capacity. *See Cerbone*, 225 S.W.3d at 771 (no purposeful availment where individual signed agreement in corporate capacity). We also note that our decision does not reach the merits of General's claim. There is a difference between the issue of liability and imputing one entity's contacts to another for jurisdictional purposes. *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 174 (Tex.2007). Our decision today addresses the jurisdictional issue as to whether DIVA's act can be imputed onto Hofstatter, who was acting in her corporate capacity. *See id.*

2. The dissent contends that our analysis of and reliance on *Wolf* is in conflict with two Texas Supreme Court cases and two Fourteenth Court of Appeals cases. *See PHC–Minden*, 235 S.W.3d 163; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex.2005); *Weldon–Francke v. Fisher*, 237 S.W.3d 789 (Tex.App.–Houston [14th Dist.] 2007, no pet.); *Cerbone*, 225 S.W.3d 764. *PHC–Minden* involved a tort claim and an assertion of only general jurisdiction. Our case involves specific jurisdiction on a breach of contract claim. Additionally, the Court in *PHC–Minden* reasoned that deciding whether a business contact can be imputed on a corporate official is a jurisdictional issue, not one of liability. 235 S.W.3d at 174. Our conclusion and *Wolf* follow this reasoning. Because Hofstatter was acting in her corporate capacity, DIVA's act cannot be imputed to Hofstatter, depriving the trial court of jurisdiction. *See id.* *PHC–Minden* supports *Wolf* and our conclusion on personal jurisdiction. Our decision is not also in conflict with *Michiana*. *Michiana* reasons, as do we, that jurisdiction turns on purposeful availment and contacts. 168 S.W.3d at 791–92. *Fisher* is a tort case reasoning that liability is irrelevant in a jurisdictional analysis. 237 S.W.3d at 797–98. Our decision today does not dispute this contention. Moreover, our opinion in *Cerbone* supports our conclusion. *See supra* note 1.

3. The dissent believes that General failed to allege a breach of contract claim against the Officers. General's answer is divided into four parts: a general denial, a counterclaim against Meristar, a cross-claim against DIVA, and a third-party claim against the Officers. The cross-claim states a breach of contract claim against DIVA, and the third-party petition states a breach of contract claim against the Officers. General's third-party petition alleges that the Officers, who exclusively owned and operated DIVA, are liable for breach of contract. *See Tex. Dept. of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex.2002) (holding that in considering jurisdictional motions, the reviewing court construes the pleadings in the plaintiff's favor). Accordingly, a breach of contract claim was alleged against the Officers in the third-party petition.

for work completed. *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F.Supp.2d 696, 714–15 (E.D.Tex. 2006). Under chapter 162, construction payments are trust funds if the payments were made to a contractor or to an officer under a construction contract for improvement of specific real estate in Texas. Tex. Prop.Code Ann. § 162.001. The contractor or officer who receives the trust funds is a trustee of the funds. *Id.* § 162.002. The artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or furnishes labor or material for the construction or repair of an improvement on specific real property located in Texas is the beneficiary of any trust funds paid or received in connection with the improvement. *Id.* § 162.003. A trustee who intentionally or knowingly or with the intent to defraud directly or indirectly retains, uses, disburses, or otherwise diverts the funds has misapplied the trust funds. *Id.* § 162.031. Thus, a trustee who misapplies these trust funds is subject to personal civil liability if (1) the party breaches the duty imposed by chapter 162 with the requisite scienter, and (2) the claimants are within the class of people chapter 162 was designed to protect and have asserted the type of injury chapter 162 was intended to prohibit. *C & G, Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex.App.–Dallas 2005, pet. denied). Any officer or director who has control or direction over the funds is also a trustee of the funds and is personally liable. *Id.* at 453–54.

Under Texas law, the construction payments from Meristar to DIVA were trust funds held for the benefit of General, a subcontractor and materialman on the Hilton project. Any officer or director who had control or direction over such funds was also a trustee of the funds. It is undisputed that the Officers had exclusive control and direction over these funds. General pleads that the Officers were the sole owners and shareholders of DIVA and that they controlled and directed all funds received by Meristar for the Hilton project. Thus, they are charged by the Texas Trust Fund Act with the fiduciary duties and responsibilities of a Texas trustee. The dissent reasons that no personal jurisdiction exists because the Officers did not act in their individual capacities, but on behalf of DIVA. This point is irrelevant in the instant case because the cause of action made the basis of personal jurisdiction imputes individual liability on the Officers for misappropriating Texas trust funds. By controlling the trust funds, the Texas Trust Fund Act imposes a fiduciary duty that extends beyond DIVA and reaches the Officers individually. *See Nuclear Corp. of Am. v. Hale*, 355 F.Supp. 193, 197 (N.D.Tex.1973) (stating that individual liability depends only on whether officers controlled or directed funds).[4] Looking at

4. The dissent relies on *Commonwealth Gen. Corp. v. York* to support its contention that we consider only the Officers' purposeful contacts with Texas and not the contacts of DIVA in assessing personal jurisdiction. 177 S.W.3d 923 (Tex.2005). Unlike *York*, the instant case involves liability under chapter 162, which automatically imputes individual liability upon an officer or shareholder who controls and directs the trust funds, regardless of the capacity in which the individual is acting while handling the funds. Chapter 162 essentially pierces the corporate veil for subcontractors. Because the statute explicitly creates a fiduciary relationship and imposes individual liability regardless of one's acting capacity, a piercing of the corporate veil analysis is inappropriate for General's chapter 162 claims. *See Jones*, 165 S.W.3d at 453–54 (a party who misapplies trust funds under chapter 162 is subject to civil liability); *Perry & Perry Builders v. Galvan*, No. 03–02–00091–CV, 2003 WL 21705248, at *4–5 (Tex.App.–Austin July 24, 2003, no pet.) (mem. op.) (jury charge and findings were sufficient in chapter 162 suit instructing the jury that individual liability exists where trustee diverts funds from beneficiary); *Lively v. Carpet Servs., Inc.*,

the chapter 162 claim, we must focus only on whether General has pleaded that the Officers, regardless on behalf of DIVA or in their individual capacities, controlled and directed funds received for the Hilton project. Clearly, General has done so.[5]

General also relies on *Herbert v. Greater Gulf Coast Enterprises, Inc.* in support of its jurisdiction argument. 915 S.W.2d 866 (Tex.App.–Houston [1st Dist.] 1995, no writ). In *Herbert,* our sister court faced a similar issue in which a Texas company sought to sue the president of a foreign company in his individual capacity. *Id.* at 869. The Texas company alleged that chapter 162 imposed individual liability upon the defendant because he misdirected trust funds that were received by the foreign company under a construction contract. *Id.* at 870. The First Court concluded that these allegations alone were sufficient to confer personal jurisdiction. *Id.* Accepting as true General's allegations that the Officers misappropriated Texas trust funds, we hold that such allegations are sufficient to establish minimum contacts with respect to its chapter 162 claim. *See id.*[6]

### Fraud Claim

In their third issue, the Officers argue that there is no personal jurisdiction as to General's fraud claim, which alleges that the Officers continued to allow General to work on the Hilton project under the false pretense that General would be paid, knowing all along that the Officers had no intentions of paying General. The Officers argue that the trial court did not have personal jurisdiction on the fraud claim because there is no evidence that any false statements were made to General. This argument relates to the merits of whether the Officers actually committed the alleged fraud. Ultimate tort liability is not a jurisdictional fact; the merits are not at issue in a special appearance. *See Cerbone,* 225 S.W.3d at 770; *Glattly v. CMS Viron Corp.,* 177 S.W.3d 438, 449 (Tex.App.–Houston [1st Dist.] 2005, no pet.).

The Officers may be individually liable for the alleged false statements because a corporate officer can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a corporate representative. *See Glattly,* 177 S.W.3d at 448. It is not necessary that the corporate veil be pierced in order to impose liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing. *Id.* (quoting *Wright v. Sage Engineering, Inc.,* 137 S.W.3d 238, 250 (Tex.App.–Houston [1st Dist.] 2004, pet. denied)). The Officers' alleged fraud sufficiently "relates to" conduct purpose-

904 S.W.2d 868, 873 (Tex.App.–Houston [1st Dist.] 1995, writ denied) (any officer or director who has control or direction over the funds is also a trustee, and is therefore personally liable).

5. The dissent also contends that the Officers had no substantial connection with Texas. The record reveals that performance under the construction contract was to be performed exclusively in Texas. The Officers sent and directed payments to General in Texas. Kelly made site visits to the Texas work site. The Officers received numerous invoices from Texas regarding the Hilton project. *See Burger King Corp. v. Rudzewicz,* 471

U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (when a party reaches out beyond one state and creates a continuing relationship and obligation with a citizen of another state, he is subject to regulation and sanctions in the other state for the consequences of his activities).

6. The dissent rejects *Herbert* on erroneous grounds. *Herbert* is directly on point. The dissent cites to no authority overruling or disagreeing with *Herbert* and provides no authority involving a chapter 162 claim that supports is its contentions.

fully directed toward Texas. We hold that General has made allegations of sufficient minimum contacts with respect to its fraud claim.

## FAIR PLAY AND SUBSTANTIAL JUSTICE

 Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered, in light of other factors, to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The other relevant factors are: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). After reviewing these factors and the evidence, it is clear that jurisdiction would not offend traditional notions of fair play and substantial justice. The Officers have not made a showing of undue burden. The litigation below involves numerous parties, counterclaims, and crossclaims. Because the Officers, on behalf of DIVA, are defending against certain claims in this Texas lawsuit, there will be no additional burden on them to defend against General's chapter 162 and fraud claims. It would be a waste of judicial resources to litigate all the claims, including the counterclaims and cross claims, in Texas, and litigate two related claims in another forum. Texas also has a legitimate interest in asserting jurisdiction: (1) the litigation involves misappropriated trust funds and fraudulent acts subject to Texas law; (2) General is a Texas resident; and (3) the litigation involves work performed on Texas real estate. *See D.H. Blair Inv. Banking Corp. v. Reardon,* 97 S.W.3d 269, 278 (Tex.App.–Houston [14th Dist.] 2002, pet. dism'd w.o.j.).

 General also has a heightened interest in obtaining relief in this case. Subcontractors and materialmen are at the bottom of the construction chain, leaving chapter 162, in most cases, their only remedy to recover for work performed on construction projects. *In re HLW Enterprises of Tex., Inc.,* 157 B.R. 592, 597 (Bankr.W.D.Tex.1993). Because chapter 162 is a remedial statute, we must give it a broad construction to effectuate its protective purposes. *Jones,* 165 S.W.3d at 454. The dissent ignores the statute's purpose. The Texas Supreme Court has indicated that the Texas Trust Fund Act should be construed liberally in favor of laborers and materialmen. *RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex. 1985). This provision was specifically enacted to serve as a special protection for subcontractors and materialmen in situations as the instant one, where contractors refuse to pay the subcontractor or materialman for labor and materials. *Taylor Pipeline Constr.,* 438 F.Supp.2d at 714–15; *Herbert,* 915 S.W.2d at 870–871. Additionally, states and the intrastate judicial system both hold similar interests in resolving such conflicts efficiently in order to protect residents from economic loss resulting from torts. *See Guardian Royal,* 815 S.W.2d at 228.

The basic equities clearly weigh in favor of in personam jurisdiction. We hold that jurisdiction over the Officers is not offensive to the ideals of fair play and substantial justice with respect to the chapter 162 and fraud claims. We further hold that

the trial court did not err by denying the Officers' special appearance as to the chapter 162 and fraud claims. We overrule appellants' second and third issues.

We affirm the trial court's order denying the Officers' special appearance with respect to General's chapter 162 and fraud claims, and reverse the trial court's order denying the Officers' special appearance as to General's breach of contract claim. We remand to the trial court with instructions to dismiss General's breach of contract claim against the Officers for want of personal jurisdiction.

FROST, J. dissents.

KEM THOMPSON FROST, Justice, dissenting.

In this case, corporate officers of an Arizona-based general contractor appeal the denial of their joint special appearance in a lawsuit filed against them in their individual capacities by a Texas-based subcontractor. The subcontractor seeks to recover damages based on purported breach-of-contract claims, alleged fraudulent statements, and alleged violations of Chapter 162 of the Texas Property Code. In its live pleading, the subcontractor did not allege (1) a breach-of-contract claim against the officers, (2) that the corporate officers committed any act in Texas, or (3) that the corporate officers were doing business in Texas at any time. Because the subcontractor failed to satisfy the fundamental requirement that its pleading contain sufficient allegations of some basis for the exercise of personal jurisdiction, the corporate officers satisfied their burden of negating all bases of personal jurisdiction by presenting undisputed evidence that they are not Texas residents. Moreover, as to the Chapter 162 claims, because the evidence conclusively proves that the corporate officers satisfied their burden of negating all bases of personal jurisdiction,

the evidence is legally insufficient to support the trial court's implied findings to the contrary. Accordingly, this court should sustain the second and third issues, reverse the trial court's order, and order the trial court to dismiss the subcontractor's claims against the officers for lack of personal jurisdiction. Because it does not, I respectfully dissent.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellants Dan Kelly and Laura Hofstatter (collectively the "Officers") are the sole shareholders and officers of Diva Consulting, Inc. ("Diva"), an Arizona-based general contractor. Hofstatter is the President of Diva, and Kelly is the company's Vice President. It is undisputed that both individuals are Arizona residents. Diva, acting as the general contractor on a Texas construction project, contracted with subcontractor General Interior Construction, Inc. ("General"), a Texas company, for hotel renovations to be performed in Texas. Diva disputed the amount allegedly owed and stopped paying General because Diva claims to have incurred expenses in remedying alleged flaws in General's work.

After the owner of the property, Meristar Hospitality Corporation ("Meristar") sued both Diva and General, General filed a third-party petition against the Officers, ostensibly asserting three claims: (1) breach of contract, (2) violations of Chapter 162 of the Texas Property Code, and (3) fraud.

In a section of its petition entitled "Breach of Contract," General made the following allegations:

- Diva breached its contract with General, causing General to suffer damages in an amount in excess of the minimum jurisdictional limit of the trial court.

- Hofstatter is President of Diva; Kelly is Vice President of Diva.
- The Officers are the only owners of Diva.

Citing to alleged violations of Chapter 162 of the Texas Property Code, General made the following allegations:

- Payments Meristar made to Diva or the Officers were trust funds to be held for the benefit of General.
- Meristar's payments made to Diva were in return for work performed in Texas by General.
- The Officers were trustees of all payments Meristar made to Diva.
- General was the beneficiary of trust funds paid to the Officers.
- The Officers acted with intent to defraud by providing affidavits to Meristar stating that all subcontractors were paid or would be paid when that statement was untrue.
- Therefore, the Officers are liable to General for violating section 162.005(1)(C) of the Texas Property Code.

Finally, General made the following allegations pertaining to fraud:

- The Officers promised that General would be paid under the contract, but General received only partial payment.

- The Officers made material misrepresentations with the intention that General would rely on those misrepresentations.
- The Officers made such misrepresentations with the knowledge that the statements were false or with reckless disregard for the truth.
- General relied on the misrepresentations and was damaged as a result.

The Officers filed a joint special appearance contesting the trial court's ability to exercise personal jurisdiction over them as to General's third-party claims. The trial court denied this special appearance, and the Officers have appealed.[1]

## JURISDICTIONAL ANALYSIS

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.[2] For a defendant to have sufficient minimum contacts with the forum, it is essential that there be some act by which the nonresident defendant "purposefully avails" itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws.[3] Although not

1. Whether a trial court may exercise personal jurisdiction over the nonresident officers is a question of law for de novo review. *See BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). The trial court did not issue any findings of fact or conclusions of law. Therefore, all facts necessary to support the trial court's ruling that are supported by the evidence are implied in favor of the trial court's decision. *Id.* at 795. Parties may challenge on appeal the legal and factual sufficiency of these implied factual findings. *Id.* In conducting a no-evidence analysis, this court is to review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *See City of Keller v. Wilson,* 168

S.W.3d 802, 822 (Tex.2005). This court must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. This court must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the sole judge of the credibility of the witnesses and the weight of their testimony. *See id.* at 819.

2. *See BMC Software,* 83 S.W.3d at 795.

3. *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005).

determinative, foreseeability is an important consideration in deciding whether the nonresident defendant purposefully has established minimum contacts with Texas.[4] The concept of foreseeability is implicit in the requirement that there be a substantial connection between the defendant and Texas arising from the defendant's conduct purposefully directed toward Texas.[5] A defendant should not be subject to a Texas court's jurisdiction based upon random, fortuitous, or attenuated contacts.[6]

For specific jurisdiction to exist as to a particular claim, the claim must arise from or relate to the defendant's purposeful contacts with Texas.[7] In conducting a specific-jurisdiction analysis, the focus is on the relationship among the defendant, Texas, and the litigation.[8] For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation.[9]

Under three issues, the Officers challenge the trial court's implied findings of specific jurisdiction. Other intermediate courts of appeals have performed the specific-jurisdiction analysis on a claim-by-claim basis.[10] The United States Supreme Court, the Texas Supreme Court, and this court have not yet addressed this issue. By holding that the trial court's order should be affirmed in part and reversed in part following a claim-by-claim specific-jurisdiction analysis, this court necessarily takes a position on the issue of whether all claims stand or fall together in a specific-jurisdiction analysis. The majority chooses the correct approach—a claim-by-claim analysis—but nevertheless reaches the wrong result.

## Breach–of–Contract Claim

Though General claims to have asserted a breach-of-contract claim against the Officers, even liberally construing General's third-party petition, the pleading does not contain such a claim. After previously alleging the existence of a contract between General and Diva, General made the following allegations in a section of General's petition entitled "Breach of Contract":

> DIVA wholly and completely failed to perform its obligations under the contract, resulting in damages to [General]. [General's] damages were a natural, probable, and foreseeable consequence of DIVA's breach. DIVA failed to honor the contract by failing to pay [General] for all services and materials provided. DIVA's conduct constitutes a breach of the contractual obligations and relationship [sic] between the parties, both written and oral, express and implied. DIVA's breach has caused [Gen-

**4.** *BMC Software,* 83 S.W.3d at 795.

**5.** *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227 (Tex.1991).

**6.** *BMC Software,* 83 S.W.3d at 795.

**7.** *Am. Type Culture Collection Inc. v. Coleman,* 83 S.W.3d 801, 806–07 (Tex.2002).

**8.** *See Guardian Royal,* 815 S.W.2d at 228.

**9.** *See Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 585 (Tex.2007).

**10.** *See Seiferth v. Helicopteros Atuneros, Inc.,* 472 F.3d 266, 274–75 (5th Cir.2006) (analyzing specific jurisdiction on a claim-by-claim basis because the Due Process Clause precludes a court from exercising specific jurisdiction as to a claim that does not arise from or relate to the defendant's forum contacts based on the court's legitimate exercise of specific jurisdiction over a defendant as to another claim); *Barnhill v. Automated Shrimp Corp.,* 222 S.W.3d 756, 767 (Tex.App.–Waco 2007, no pet.).

eral] to suffer damages in an amount in excess of the minimum jurisdictional limits of this Court.

At all relevant times herein, LAURA HOFSTATTER was President of [Diva] and DAN KELLY was Vice President of [Diva]. They are the only owners of [Diva].

These allegations are the only part of General's pleading that arguably could constitute an allegation of breach of contract against the Officers. However, General never alleged that the Officers entered into a contract with General, that General performed under such a contract, that the Officers breached such a contract, or that General has suffered any damages resulting from the breach of such a contract. According to the majority opinion, General alleges in its petition that the Officers exclusively operated Diva and that the Officers are liable for breach of contract. *See ante* at p. 89, n. 3. However, General's pleading contains neither of these allegations. General does allege that the Officers are liable for violation of section 162.005(1)(C)(2) of the Texas Property Code and that General is suing the Officers for fraud; however, General does not state that the Officers are liable for breach of contract.

In the absence of special exceptions, this court must construe General's third-party petition liberally and must find that the petition contains any claims that reasonably may be inferred from the specific language used in the petition, even if the petition fails to state all of the elements of that claim.[11] This court, however, cannot use the liberal construction of the petition as a license to read into the petition a claim that it does not contain.[12]

The elements of a breach-of-contract claim by General against the Officers would be: (1) the existence of a valid contract between General and the Officers, (2) performance or tendered performance by General under the contract, (3) breach of the contract by the Officers, and (4) damages sustained by General as a result of the Officers' breach.[13] Even liberally construing General's third-party petition, it cannot reasonably be inferred from the pleading's language that General has alleged any of these elements.[14] Though the petition does contain allegations under the heading "Breach of Contract," the only claim that reasonably can be inferred from the language of this section is a breach-of-contract claim by General against Diva.[15] Because General failed to allege a breach-of-contract claim against the Officers, this court need not conduct a specific-jurisdiction analysis regarding breach of contract.

The majority concludes that General did allege a breach-of-contract claim against the Officers. The majority, however, concludes that the Officers are not subject to personal jurisdiction as to this purported claim because the Officers were acting in their capacities as agents of Diva and because they are not parties to General's subcontract with Diva. In reaching its conclusion, the majority relies on *Wolf v. Summers–Wood, L.P.,* in which the Fifth Court of Appeals held that the trial court

---

**11.** *See San Saba Energy, L.P. v. Crawford,* 171 S.W.3d 323, 336–37 (Tex.App.–Houston [14th Dist.] 2005, no pet.).

**12.** *See id.*

**13.** *See Aguiar v. Segal,* 167 S.W.3d 443, 450 (Tex.App.–Houston [14th Dist.] 2005, pet. denied).

**14.** *See San Saba Energy, L.P.,* 171 S.W.3d at 336–37.

**15.** *See id.*

lacked personal jurisdiction over corporate officers as to the contract claim solely because the *Wolf* court determined that the officers were not parties to the contract in question.[16] Though the *Wolf* case supports the majority's analysis, this analysis conflicts with prior precedents from this court and the Texas Supreme Court.

In conducting a personal-jurisdiction analysis, this court should review only the claims and the evidence regarding the Texas contacts of the parties who are objecting to personal jurisdiction; this court should refrain from conducting a merits-based analysis. Indeed, at this juncture, the merits of the claims are not at issue.[17] The court's task in reviewing a special appearance is simply to identify the claims in question and assess the Texas contacts of the Officers in light of those claims.

For example, in *Cerbone*, the specially appearing defendant asserted that the promissory note he signed in Illinois was executed only as agent of the corporation for which he served as president and chief executive officer.[18] The plaintiff alleged that the corporate officer had executed the note in his individual capacity.[19] This court declined an invitation to consider the merits and to determine whether the corporate officer was a party to the contract in his individual capacity.[20] Instead, this court concluded that, presuming the corporate officer was a party to the contract in his individual capacity, the jurisdictional evidence conclusively proved that the claims against the corporate officer did not arise from or relate to the officer's purposeful contacts with Texas.[21] The majority asserts that its analysis does not address the merits of General's purported breach-of-contract claim; however, if, as the majority holds, there is no valid contract between the Officers and General, then any contract claim by General against the Officers clearly lacks merit.[22] Therefore, contrary to precedent, the majority does address the merits.[23]

The majority's analysis of the purported breach-of-contract claim is unnecessary because General has not pleaded a contract claim against the Officers. In addressing this claim, the majority creates a conflict with *Cerbone* and other precedents that require this court to review the trial

16. 214 S.W.3d 783, 792 (Tex.App.–Dallas 2007, no pet.).

17. *See, e.g., Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 791; *Weldon–Francke v. Fisher,* 237 S.W.3d 789, 792 (Tex.App.–Houston [14th Dist.] 2007, no pet.).

18. *See Cerbone,* 225 S.W.3d at 766–68 & n. 1.

19. *See id.*

20. *See id.* at 769–70.

21. *See id.* at 768–71.

22. *See Aguiar,* 167 S.W.3d at 450.

23. *See PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 174 (Tex.2007) (citing with approval cases holding that courts should not determine merits of claims in de-termining whether personal jurisdiction may be exercised over the claims); *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 791 (stressing that courts must not equate liability with personal jurisdiction because it would be improper if a party's liability established personal jurisdiction and a party's nonliability negated personal jurisdiction); *Weldon–Francke,* 237 S.W.3d at 792 (stating that "the merits of the [plaintiffs'] claims are not at issue in determining whether the trial court erred in concluding that it could exercise personal jurisdiction over [the defendants]"); *Cerbone v. Farb,* 225 S.W.3d 764, 769–70 (Tex.App.–Houston [14th Dist.] 2007, no pet.) (presuming, for purpose of personal-jurisdiction analysis, that nonresident corporate officer signed promissory note in individual capacity, as alleged by plaintiff, rather than addressing whether, as alleged by officer, he signed note solely on behalf of the corporation).

court's personal-jurisdiction rulings without addressing the merits of the claims in question. The better course would be to eliminate this unnecessary analysis and instead dispose of the issue based on General's failure to assert a contract claim against the Officers.

## Chapter 162 Claims and Fraud Claims

### General's petition does not contain sufficient allegations to invoke the exercise of personal jurisdiction over the Officers

The record reflects that the Officers were served with process under Texas Rule of Civil Procedure 108. Whether a nonresident defendant is served with process under this rule or under the Texas long-arm statute, the plaintiff must allege in its petition some basis for personal jurisdiction, such as the defendant's conducting of business in Texas or the defendant's commission of an act or acts in Texas.[24] If the plaintiff does not make such jurisdictional allegations in the petition, then the defendant can satisfy his burden of negating all bases of personal jurisdiction by presenting evidence that the defendant is not a resident of Texas.[25]

In its third-party petition, General alleges that the Officers acted with intent to defraud by providing false affidavits to Meristar and that the Officers violated section 162.005(1)(C) of the Texas Property Code. General also asserts that the Officers fraudulently represented that General would be paid in full under its contract with Diva. Notably, General does not allege that any of these acts occurred in Texas. Moreover, in its third-party petition, General does not allege that the Officers committed any act whatsoever in Texas or that they conducted any business whatsoever in Texas. Therefore, General's third-party petition lacks sufficient allegations to invoke the trial court's personal jurisdiction over the Officers, and the Officers, thus, could satisfy their burden of negating all bases of personal jurisdiction merely by presenting evidence that they are not residents of Texas.[26]

In their joint special appearance, the Officers proved that they are residents of Arizona and not residents of Texas. General has not disputed this evidence. The Officers, thus, satisfied their burden of negating all bases of personal jurisdiction, and the trial court erred as a matter of law by denying their joint special appearance.[27]

24. See Tex. Civ. Prac. & Rem.Code Ann §§ 17.041–.045 (Vernon Supp.2005); Tex.R. Civ. P. 108; *Moki Mac River Expeditions*, 221 S.W.3d at 574 (stating that plaintiff who serves nonresident defendant under the Texas long-arm statute bears the initial burden of pleading in its petition sufficient allegations to invoke personal jurisdiction); *Paramount Pipe & Supply Co., Inc. v. Muhr*, 749 S.W.2d 491, 495–96 (Tex.1988) (holding that, even if plaintiff serves a nonresident defendant under Rule 108, rather than the Texas long-arm statute, the plaintiff still bears the initial burden of pleading in its petition sufficient allegations to invoke personal jurisdiction, such as the defendant's conducting business in Texas and committing purposeful acts in Texas); *Boston Medical Group, Inc. v. Ellis*, No. 14–06–00801–CV, 2007 WL 2447360, at *3 (Tex.

App.–Houston [14th Dist.] Aug. 30, 2007, no pet.) (noting that there is a minimal requirement that pleadings support personal jurisdiction over nonresident defendants by alleging that they did business in Texas or committed acts in Texas) (mem. op.).

25. See *Perna v. Hogan*, 162 S.W.3d 648, 653 (Tex.App.–Houston [14th Dist.] 2005, no pet.).

26. See id.

27. See id. (holding that trial court erred in denying special appearances because plaintiffs' petition did not contain sufficient allegations invoking personal jurisdiction over the nonresidents and because the nonresidents presented undisputed evidence that they are not residents of Texas).

*In any event, the evidence conclusively negates jurisdiction as to the Chapter 162 claims*

General alleges that the Officers are individually liable because they allegedly violated Chapter 162 of the Texas Property Code.[28] General claims that all payments made by Meristar to Diva or the Officers were trust funds[29] and that under Chapter 162, the Officers were trustees of all such payments because the Officers allegedly are owners and officers of a contractor who allegedly received trust funds or who allegedly had control or direction of trust funds.[30] General alleges that it is a beneficiary of these alleged trust funds the Officers received or over which they had control or direction.[31] General further alleges that the Officers acted with intent to defraud and are liable under section 162.005(1)(C) of the Texas Property Code because they allegedly used, disbursed, or diverted trust funds that were paid in reliance on an affidavit (furnished by the Officers under section 53.085) that contains false information relating to the trustee's payment of current or past due obligations.[32] Under binding precedent, for purposes of the jurisdictional analysis, this court is to presume without deciding that these allegations are true and then examine the evidence regarding the relationship between these allegations and the Officers' respective purposeful contacts with Texas.[33]

To meet their burden to negate all potential bases of jurisdiction, the Officers filed a verified joint special appearance proving the following:

- The Officers are both residents of Arizona.
- The Officers do not reside in Texas, own property in Texas, have an office or employees in Texas, or transact business in Texas in their individual capacities.
- The Officers are corporate officers and directors of Arizona-based Diva.
- Diva is a party to the contract at issue in the underlying lawsuit, but the Officers are not parties to that contract in their individual capacities and did not guarantee the contract.
- Meristar is the owner of the property.
- Meristar is based in Arizona.
- The contract between Meristar and Diva was entered into in Arizona.
- Diva "worked with Meristar's agent in Arizona."
- When Meristar paid monies in connection with work on the property, funds were transferred from one Arizona bank account to Diva's Arizona bank account.
- The funds were held in Diva's Arizona general operating account and used to pay expenses and salaries in Arizona.[34]

---

28. *See* TEX. PROP.CODE ANN. §§ 162.001–.033 (Vernon 2007).

29. *See id.* § 162.002.

30. *See id.*

31. *See id.* § 162.003.

32. *See id.* § 162.005(1).

33. *See Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 791; *Weldon–Francke,* 237 S.W.3d at 792.

34. The Officers also attached documents to their joint special appearance that purportedly show (1) the funds from Meristar were used to pay for business-related expenses for the Texas hotel renovation and (2) Diva's calculations of the expenses incurred in remedying flaws in General's work as evidence that General owes Diva money instead of Diva owing General. Although these documents might relate to affirmative defenses under section 162.031(b), this court is to presume that General's claims have merit for the purposes of our jurisdictional analysis. *See* TEX. PROP.CODE ANN. § 162.031(b) (Vernon 2007); *Michiana*

The evidence provided by General in response to the Officers' special appearance does not conflict with any of these facts. Therefore, these facts are undisputed.

Any alleged knowledge that the brunt of the alleged damages caused by the alleged torts would be felt by General in Texas is insufficient to support specific jurisdiction.[35] The proper approach is to analyze the degree of connectedness between the Officers' Texas contacts and the operative facts of the Chapter 162 claims to determine whether the operative facts involve contacts with Texas.[36] To find specific jurisdiction over the non-resident Officers, the evidence must establish a substantial connection between each defendant's purposeful contacts with Texas and the operative facts of the Chapter 162 claims.[37] In conducting the personal-jurisdiction analysis, only the Officers' purposeful contacts with Texas are to be considered—not the Texas contacts of any other parties.[38] This court may not consider Diva's contacts with Texas.

Nonetheless, in determining that specific jurisdiction exists as to the Texas Property Code claim, the majority relies on the following alleged contacts of Diva:

- Diva's regular conducting of business in Texas
- Diva's entering into the contract for the project in question
- Diva's entering into numerous agreements with Texas subcontractors, including General
- Diva's sending of two checks to General to make payment on Diva's contract with General Diva's and/or General's performance of the construction work in Texas
- Diva's receipt of invoices from General.

Because there is no pleading or proof of any theory for piercing the corporate veil, this court should consider only the Officers' purposeful contacts with Texas and not the contacts of Diva or any other party.[39] The majority concludes that, because Chapter 162 provides for personal liability for corporate officers under certain circumstances, General's allegation of liability under Chapter 162 allows this court to consider all of Diva's contacts with Texas

---

*Easy Livin' Country, Inc.,* 168 S.W.3d at 791; *Weldon–Francke,* 237 S.W.3d at 792. These documents do not provide any evidence regarding the Officers' purposeful contacts with Texas or lack thereof.

35. *See* Tex. Prop.Code Ann. §§ 162.002, 162.031(a); *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 788–92 (overruling court of appeals cases applying the "brunt of the injury" specific-jurisdiction analysis); *Markette v. X–Ray X–Press Corp.,* 240 S.W.3d 464, 469 n. 4 (Tex.App.–Houston [14th Dist.] 2007, no pet.) (holding that Supreme Court of Texas has overruled court of appeals cases applying the "brunt of the injury" specific-jurisdiction analysis).

36. *See Moki Mac River Expeditions,* 221 S.W.3d at 584–85.

37. *See id.* at 585.

38. *See id.* at 575 (stating that, in analyzing personal jurisdiction, the only contacts that are relevant are the purposeful contacts with Texas of the parties challenging the trial court's personal jurisdiction and that the contacts of all other parties are not relevant).

39. *See Commonwealth Gen. Corp. v. York,* 177 S.W.3d 923, 925 (Tex.2005) (holding, in personal-jurisdiction analysis, that contacts of corporation could not be considered as contacts of sole shareholder unless there was evidence that would support a finding that shareholder and corporation were alter egos, in which case the corporation would be viewed as the same legal person as the shareholder); *Michiana Easy Livin' Country, Inc.,* 168 S.W.3d at 785 (stressing that personal-jurisdiction analysis considers only the purposeful Texas contacts of the defendant challenging personal jurisdiction).

as if they were the Officers' contacts with Texas in their individual capacity. The majority's analysis conflicts with this court's opinion in *Cerbone*, in which the court presumed that the corporate officer executed the contract in his individual capacity, as alleged by the plaintiff; however, the *Cerbone* court did not count all the contacts of the corporation with Texas as being contacts of the corporate officer in his individual capacity.[40]

The operative facts regarding General's claims under Chapter 162 are (1) the Officers' submission of affidavits to Meristar, (2) Meristar's payment of funds to Diva or the Officers in reliance on these affidavits, (3) the Officers' alleged receipt or exercise of control over payments from Meristar, and (4) the Officers' alleged use of these funds. However, the undisputed evidence before the trial court shows that none of these events occurred in Texas.[41]

Under Chapter 162 of the Texas Property Code, corporate officers are subject to potential personal liability. Rather than focus on the operative facts under which the Officers would be personally liable under General's Chapter 162 allegations, the majority focuses on contacts that cannot give rise to liability under Chapter 162—evidence that Kelly made three or four trips to the site of the Texas project (Hofstatter made no such trips), letters and faxes between the Officers (as representatives of Diva) and representatives of General in Texas regarding the project, and

two checks the Officers sent on behalf of Diva to General.[42]

The majority relies on *Herbert v. Greater Gulf Coast Enterprises, Inc.*, a case in which the First Court of Appeals rejected a writ-of-error challenge to a default judgment awarding a subcontractor recovery on its Chapter 162 claim against the president of a general contractor.[43] The appellant in *Herbert* asserted that the plaintiff's petition did not contain sufficient allegations regarding personal jurisdiction.[44] The *Herbert* court concluded that the subcontractor's petition contained a "sufficient allegation of appellant's purposeful act or transaction in the State of Texas" and that "[t]he cause of action, collection of money owed under the construction contract, clearly arose out of the transaction." [45] In the context of a review of General's claims and the personal-jurisdiction evidence in this case, the *Herbert* case is not on point because it involves only the sufficiency of the allegations in the plaintiff's petition.[46] However, even equating, as the majority does, the allegations in *Herbert* with jurisdictional proof, the *Herbert* court found that the following was sufficient to allow the trial court to exercise personal jurisdiction:

- The nonresident general contractor accepted, benefitted from, and promised to pay for labor and materials from a Texas subcontractor on a Texas construction project.

---

**40.** *See Cerbone*, 225 S.W.3d at 768–71.

**41.** Indeed, the evidence submitted by General indicates that the affidavits were sent to Meristar in Virginia and that Meristar sent checks drawn on a Virginia bank account to Diva in Arizona.

**42.** *See York*, 177 S.W.3d at 925 (holding court of appeals erred in finding specific jurisdiction because, even though shareholder had contacts with Texas, the claims against share-

holder did not have a sufficient connection with these contacts).

**43.** *See* 915 S.W.2d 866, 870–71 (Tex.App.–Houston [1st Dist.] 1995, writ denied).

**44.** *See id.*

**45.** *Id.*

**46.** *See id.*

- Although requested to do so, the non-resident general contractor refused to pay the subcontractor as it had agreed.
- Under Chapter 162 of the Texas Property Code, the nonresident general contractor and its president Paul Herbert were trustees for construction draws, as to which the plaintiff subcontractor was the beneficiary; and these defendants diverted and disposed of these draws.[47]

Even presuming that our record contained evidence of all of the above facts, under the current legal standard for special appearances in Texas, this evidence would not be sufficient to prove a substantial connection between a nonresident officer's purposeful contacts with Texas and the operative facts of the Chapter 162 claims.[48] The *Herbert* court used as its legal standard for personal jurisdiction the three-pronged test enunciated in *O'Brien v. Lanpar Co.*[49] In 1984, the United States Supreme Court began using the concepts of specific jurisdiction and general jurisdiction in the legal standard for analyzing personal jurisdiction.[50] The Texas Su-

preme Court then tried to incorporate these two concepts into its personal-jurisdiction analysis without discarding the three-pronged *O'Brien* test.[51] Finally, in 1991, the Texas Supreme Court discarded the *O'Brien* test in favor of a legal standard focusing on the two prongs from *International Shoe Co. v. Washington*, and the definitions of specific jurisdiction and general jurisdiction from *Helicopteros*.[52] When *Herbert* was decided, there were courts of appeals decisions holding that if a nonresident tortfeasor knows that the brunt of the injury will be felt by a particular resident in the forum state, he reasonably must anticipate being haled into court there to answer for his actions.[53] However, in 2005, the Texas Supreme Court rejected this line of cases, because, among other things, the analysis used in this line of cases did not call for courts to focus sufficiently on the actions of the nonresident defendant.[54]

The *Herbert* court relied on the language from the *O'Brien* test indicating that the connection between the defendant and Texas was sufficient if the plaintiff's claim arose out of a transaction by the

47. *See id.* at 869–71.

48. *Compare id.* at 870–71, *with Moki Mac River Expeditions*, 221 S.W.3d at 584–85.

49. *See Herbert*, 915 S.W.2d at 870 (applying the *O'Brien* test and citing *Siskind v. Villa Foundation for Educ.*, 642 S.W.2d 434, 436 (Tex.1982)); *O'Brien v. Lanpar Co.*, 399 S.W.2d 340, 342 (Tex.1966).

50. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

51. *See Schlobohm v. Schapiro*, 784 S.W.2d 355, 358 (Tex.1990); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 663–64 (Tex. 1987).

52. *See Guardian Royal Exch. Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226–28 (Tex.1991); *see also Helicopteros Na-*

*cionales de Colombia, S.A.*, 466 U.S. at 414–15, 104 S.Ct. at 1872; *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

53. *See, e.g., Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex.App.– Houston [14th Dist.] 1992, no writ).

54. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 788–92 (overruling court of appeals cases applying the "brunt of the injury" specific-jurisdiction analysis); *Cerbone*, 225 S.W.3d at 772 (concluding that, under *Michiana*, personal jurisdiction cannot be based on allegations that out-of-state tortfeasors knew that the torts they were committing outside of Texas would cause damages in Texas).

nonresident defendant in Texas.[55] However, under the current legal standard, the plaintiff's claim must arise from or relate to the defendant's purposeful contacts with Texas.[56] In addition, the Texas Supreme Court has emphasized the necessity for a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation.[57] Although the *Herbert* court did not mention the "brunt of the injury" analysis, its conclusion seems implicitly based on this approach because there was no allegation that Herbert had committed any act in Texas but there was an allegation that he had misappropriated trust funds for a Texas construction project.[58] Therefore, the *Herbert* court appears to have concluded that Herbert's alleged out-of-state misappropriation of alleged trust funds for a Texas construction project was sufficient because Herbert reasonably should have anticipated being haled into court, given that he was aware that the brunt of the injury would be felt by the subcontractor in Texas.[59] The Texas Supreme Court, however, has since rejected this analysis.[60] Given the significant difference between the legal standard applied in *Herbert* and the legal standard that applies to a personal-jurisdiction analysis today, *Herbert* is not on point.[61]

The majority also cites various cases regarding liability under Chapter 162.[62] Because the merits of General's claims are not at issue in determining the trial court's ability to exercise personal jurisdiction consistent with the federal due process guarantees, these cases are not on point.[63]

The undisputed evidence shows that there is no substantial connection between the Officers' purposeful contacts with Texas and the operative facts of the Chapter 162 claims.[64] Based upon the undisputed facts, the evidence is legally insufficient to support the trial court's implied finding that the Officers established sufficient minimum contacts with Texas to support the trial court's exercise of personal jurisdic-

55. *See Herbert*, 915 S.W.2d at 870–71.

56. *Am. Type Culture Collection Inc.*, 83 S.W.3d at 806–07.

57. *See Moki Mac River Expeditions*, 221 S.W.3d at 585.

58. *See Herbert*, 915 S.W.2d at 870–71.

59. *See id.*

60. *See Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 788–92.

61. *Compare Herbert*, 915 S.W.2d at 870–71, *with Moki Mac River Expeditions*, 221 S.W.3d at 575–85.

62. *See C & G, Inc. v. C.N. Jones*, 165 S.W.3d 450, 453–54 (Tex.App.–Dallas 2005, pet. denied); *Perry & Perry Builders v. Galvan*, No. 03–02–00091–CV, 2003 WL 21705248, at *4 (Tex.App.–Austin July 24, 2003, pet. denied) (mem. op.); *Lively v. Carpet Servs., Inc.*, 904 S.W.2d 868, 873 (Tex.App.–Houston [1st Dist.] 1995, writ denied).

63. *See PHC–Minden, L.P.*, 235 S.W.3d at 174; *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 791; *Cerbone*, 225 S.W.3d at 770 (concluding that liability cases are not on point in reviewing trial court's personal-jurisdiction ruling). The majority also emphasizes that, by enacting Chapter 162, the Texas Legislature expressed a policy of protecting subcontractors, materialmen, and other Chapter 162 beneficiaries; however, the Texas Supreme Court has pointed out that statutory policies and liability choices do not override the requirement of the United States Constitution that a nonresident defendant have sufficient minimum contacts with the forum state to justify the exercise of personal jurisdiction. *See PHC–Minden, L.P.*, 235 S.W.3d at 174.

64. *See Moki Mac River Expeditions*, 221 S.W.3d at 585–88 (concluding that there was no specific jurisdiction based on the lack of a substantial connection between the defendant's purposeful contacts with Texas and the operative facts of the litigation).

tion over the Officers as to the Chapter 162 claims.[65]

### CONCLUSION

General did not allege a breach-of-contract claim against the Officers, nor did General carry its burden of alleging in its petition some basis for personal jurisdiction over them. The Officers satisfied their burden of negating all bases of personal jurisdiction by proving that they are residents of Arizona and not residents of Texas. Therefore, the trial court erred as a matter of law by denying the Officers' joint special appearance, and this court should reverse the trial court's order and remand to the trial court with instructions to dismiss General's claims for lack of personal jurisdiction.

---

**65.** Because this court should reverse based on the first prong of the jurisdictional test, there is no need to determine whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.