Patrick **FLANAGAN**, Appellant

v.

**ROYAL BODY CARE, INC.,** Appellee.

No. 05–06–01557–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2007.

R. Lynn Fielder, Fisk & Fielder, P.C., Dallas, for appellant.

R. Brent Cooper, R. Douglas Rees, Cooper & Scully, P.C., Dallas, for appellee.

Before Justices WHITTINGTON, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Appellant Patrick Flanagan appeals the trial court's order overruling his special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon 2005). In four issues, Flanagan contends the evidence is legally and factually insufficient to support a finding of general or specific jurisdiction, and the exercise of jurisdiction

over him does not comport with traditional notions of fair play and substantial justice. We conclude Flanagan is subject to specific jurisdiction and affirm the trial court's order.

## FACTUAL BACKGROUND

Flanagan is the inventor of two ingredients for skin-care products, Crystal Energy and Flanagan Microclusters (silica hydride), which were manufactured in Arizona by Flanagan Technologies, Inc. (now dissolved).[1] Appellee Royal Body Care, Inc. (RBC) is a Texas corporation with its principal place of business in Irving, Texas, and is a multi-level, worldwide distributor of nutritional supplements. Clinton H. Howard is its chief executive officer.

In 1997 and 1998, Flanagan Technologies and RBC[2] entered into an exclusive licensing agreement whereby RBC would market products containing Flanagan Microclusters. Pursuant to the licensing agreement, RBC manufactured and sold two skin-care products containing Flanagan's inventions: Microhydrin, which contained Flanagan Microclusters; and Crystal Energy, which was essentially a diluted solution of Flanagan's invention by the same name. RBC continued to sell products containing Flanagan's inventions until mid–2002, when the parties terminated their relationship because of a business dispute. From 1997 until mid–2002, RBC purchased over $15 million in ingredients from Flanagan Technologies.

At some point, Canadian residents Diane and Brian Ward filed a products-liability suit in Texas against RBC, Howard, Flanagan, and others, claiming that Diane Ward applied a mixture of Microhydrin and Crystal Energy to her face, resulting in a severe burn. The Wards alleged all defendants, among other things:

> failed to conduct reasonable research to discover or correct the defects in the products;
>
> failed to post adequate warnings of the dangers presented by the use of the products;
>
> negligently marketed the product as a safe product;
>
> failed to inform the consumer of information they knew about risks involved in using the products; and
>
> breached express and implied warranties because the products Mycrohydrin and Crystal Energy were not fit for their ordinary or intended use.

Flanagan filed a special appearance, which the trial court granted.[3] RBC then filed a third-party petition for contribution against Flanagan and Flanagan Technologies. Flanagan again filed a special appearance, which the trial court denied.[4] This accelerated, interlocutory appeal followed.

## STANDARD OF REVIEW

Whether a court has personal jurisdiction over a nonresident defendant is a question of law that often requires the resolution of factual issues. *BMC Soft-*

---

1. Flanagan and his wife were the sole shareholders of Flanagan Technologies and Flanagan was the president.

2. These agreements were signed by Howard in his capacity as President of GlobeNet International I, Inc. Howard's affidavit states that RBC is formerly known as GlobeNet, Inc. Additionally, the 1998 agreement states it is between GlobeNet and its subsidiary, RBC, and Flanagan Technologies.

3. The evidence indicates the special appearance was granted because the Wards did not properly serve Flanagan.

4. Flanagan Technologies is not contesting jurisdiction on appeal.

ware Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002); *Kytel Int'l Group, Inc. v. Rent–A–Ctr., Inc.*, 132 S.W.3d 717, 719 (Tex.App.-Dallas 2004, no pet.). When, as in this case, the trial court does not issue findings of fact and conclusions of law to support its ruling on a special appearance, we will imply the trial court found all facts necessary to support the judgment that are supported by the evidence. *BMC Software*, 83 S.W.3d at 795. But when, as in this case, the record includes the reporter's and clerk's records, those implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*

 In a legal sufficiency review, we will affirm the implied findings of the trial court if there is more than a scintilla of evidence to support them. *BMC Software*, 83 S.W.3d at 795. More than a scintilla of evidence exists if the evidence would enable reasonable and fair minded people to differ in their conclusions. *Morris v. Kohls–York*, 164 S.W.3d 686, 692 (Tex. App.-Austin 2005, pet. dism'd). A factual sufficiency challenge requires proof that an implied finding was "so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *See id.* (internal citation omitted).

### PERSONAL JURISDICTION

 The plaintiff bears the initial burden of pleading sufficient allegations to invoke jurisdiction over a defendant under the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007); *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 807 (Tex.2002). The plaintiff's original pleadings as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff

satisfied that burden.[5] TEX.R. CIV. P. 120a(3); *Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex.App.-Austin 2005, no pet.). If the plaintiff satisfies its initial burden, the nonresident defendant then assumes the burden of negating all bases of jurisdiction in those allegations. *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793.

 The Texas long-arm statute authorizes courts to exercise jurisdiction over nonresident defendants doing business within Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 2005). The long-arm statute reaches as far as possible consistent with federal constitutional guarantees of due process of law. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991). An exercise of personal jurisdiction over a nonresident defendant is consistent with federal due process requirements if the defendant has established minimum contacts with Texas. *BMC Software*, 83 S.W.3d at 795. A nonresident defendant's minimum contacts may result in either general or specific personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *BMC Software*, 83 S.W.3d at 795–96.

 In evaluating the extent of a defendant's contacts with Texas, the touchstone of our jurisdictional analysis is "purposeful availment." *Moki Mac*, 221 S.W.3d at 575 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784–85 (Tex.2005)). In determining whether a defendant has purposefully availed itself of the privilege of conducting activities within Texas, we look only to the defendant's contacts and not unilateral

---

**5.** For this reason, we disagree with Flanagan's argument that our review is limited only to the jurisdictional allegations made in RBC's third-party petition.

contacts of third parties. *Moki Mac*, 221 S.W.3d at 575. We examine only purposeful contacts of the defendant that are not random, isolated, or fortuitous. *Id.* We search for evidence in the record showing the defendant availed itself of the forum by seeking some benefit, advantage, or profit. *Id.*

In analyzing the exercise of specific jurisdiction, we focus on the relationship between the defendant, the forum, and the litigation. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. 1868; *Moki Mac*, 221 S.W.3d at 575–76. Specific jurisdiction arises when the nonresident defendant has established minimum contacts by purposefully availing itself of the privilege of conducting activities in Texas and its liability arises from or is related to those contacts. *Moki Mac*, 221 S.W.3d at 576. General jurisdiction arises when the defendant has established continuous and systematic contacts with Texas, even if the cause of action does not arise from or relate to those contacts, and requires a more demanding minimum-contacts analysis. *Am. Type Culture*, 83 S.W.3d at 806–07.

It is a well-settled rule of Texas jurisprudence that, in addition to the minimum-contacts requirement, the trial court's exercise of specific jurisdiction must comport with traditional notions of fair play and substantial justice. *See, e.g., BMC Software*, 83 S.W.3d at 795; *Guardian Royal*, 815 S.W.2d at 228. To defeat jurisdiction, it is incumbent upon the nonresident defendant to present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Guardian Royal*, 815 S.W.2d at 231. In a fair-play analysis, the factors we consider are the five factors outlined by the United States Supreme Court: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Guardian Royal*, 815 S.W.2d at 231.

## SPECIFIC JURISDICTION

### A. Did Flanagan purposefully avail himself of the privilege of doing business in Texas?

In his second and third issues, Flanagan contends he is not subject to specific jurisdiction in this case because "RBC has not pled, alleged, argued, or proved that Flanagan committed a tort in whole or in part in Texas," "[t]here must be some connection between the tort of the non-resident and Texas to establish specific personal jurisdiction," and the exercise of jurisdiction over him does not comport with traditional notions of fair play and substantial justice.

RBC alleges in its pleadings against Flanagan that the Wards' claims "arise in part from their assertion that the products sold by RBC to [the Wards] were improperly labeled or marketed." And RBC alleges "Flanagan required he, individually, approve all labels, medical claims, and promotional materials about the products sold to RBC by [Flanagan Technologies]." RBC also alleges that Flanagan "developed Microhydrin and Crystal Energy, and approved all labels, literature, news releases and articles regarding these products." RBC asserts that because the Wards' lawsuit arises in part from the alleged failure to warn of certain dangerous uses of RBC's products containing Flanagan's inventions, and Flanagan controlled the labeling of those products, it is

entitled to contribution from Flanagan if it is ultimately found liable.

To support its allegations that Flanagan is subject to specific jurisdiction, RBC attached evidence to its response to the special appearance showing that:

Flanagan must approve all products that show on the label to contain Flanagan Microclusters;

Flanagan must authorize any "medical claims, either oral, written or contained in any printed promotional materials . . . for any product which contains Flanagan Microclusters®";

Flanagan must review "[a]ll promotional materials for all products containing Flanagan Microclusters®";

Flanagan has "the right to analyze all Royal Body Care products containing Flanagan Microclusters® in order to determine that the proper amount of Microclusters® are being used in the formulation";

The Flanagans "own all right, title and interest to the U.S. and International Trademarks for the products which they have developed and that such trademarks shall not be used without the prior written consent of the Flanagans";

Flanagan "announced in Dallas on September 12th [1997], the most incredible new product ever offered by Royal BodyCare . . . Microhydrin™";

Flanagan regularly attended RBC sales meetings in Texas held for RBC's distributors to promote the benefits of Crystal Energy and Microclusters;

Flanagan was a member of RBC's board of directors from 2000 to 2001 and participated in board meetings in Texas; Flanagan attended lunches and dinners with RBC distributors in Texas; Flanagan met with RBC in Texas in December 2002 and asked RBC to resume purchasing his ingredients.

In response, Flanagan contends he is insulated from the trial court's exercise of specific jurisdiction because all of his actions were strictly in his capacity as president of Flanagan Technologies.[6] But it is undisputed that the contract between Flanagan Technologies and RBC required Flanagan's personal approval of the labeling and marketing of all RBC products that contain the ingredients Flanagan invented. It is also undisputed that Flanagan attended multiple RBC sales meetings in Texas to market RBC's products as the inventor of their key ingredients. Flanagan also served as a member of RBC's board and was an active participant in the board meetings he attended in Texas. And even if Flanagan was acting in his capacity as president of Flanagan Technologies when he had these contacts with Texas, he may be held individually liable for fraudulent or tortious acts he may have personally committed. *See Shapolsky v. Brewton,* 56 S.W.3d 120, 133 (Tex.App.-Houston [1st Dist.] 2001, pet. denied) ("It is the general rule in Texas that corporate agents are individually liable for fraudulent or tortious acts committed while in service of their corporation."), *disapproved of on other grounds by Michiana,* 168 S.W.3d at 788–89; *see also Calder v.*

---

**6.** In the portion of his brief regarding general jurisdiction, Flanagan argues the fiduciary shield doctrine protects him from liability for actions he took in his capacity as president of Flanagan Technologies. *See Wolf v. Summers–Wood, L.P.,* 214 S.W.3d 783, 790 (Tex. App.-Dallas 2007, no pet.) (fiduciary shield doctrine can protect nonresident corporate officer or employee from trial court's exercise of general jurisdiction over individual if individual's contacts with Texas made on behalf of employer). Flanagan's counsel stated during oral argument that the fiduciary shield doctrine does not apply to a specific jurisdiction analysis, and we do not consider it in our analysis.

*Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (although defendants' contacts with forum cannot be analyzed based on their employers' activities in the forum, "their status as employees does not somehow insulate them from jurisdiction.").

■ We note that in our review of the jurisdictional issue, we are not to determine whether the allegations against Flanagan are true, but whether they are sufficient to exercise jurisdiction over him. *See Michiana,* 168 S.W.3d at 798 (to establish jurisdiction, there need only be prima facie showing of purposeful contact with Texas, not proof of liability). Assuming the allegations are true for purposes of this analysis, we conclude the evidence is legally and factually sufficient to show that Flanagan purposefully availed himself of the privilege of doing business in Texas. *See BMC Software,* 83 S.W.3d at 795; *Morris,* 164 S.W.3d at 692.

In so doing, we reject Flanagan's argument that he cannot be subject to specific jurisdiction in Texas because there is no allegation that he committed a tort in Texas. The underlying Ward lawsuit for which RBC seeks contribution alleges torts against all defendants, including Flanagan. Additionally, as the Texas Supreme Court noted in *Moki Mac,* focusing on the commission of a tort in Texas as the test for specific jurisdiction "would improperly focus the purposeful-availment analysis on the form of the [cause of] action chosen by plaintiff rather than on the defendant's efforts to avail itself of the forum." *Moki Mac,* 221 S.W.3d at 576.

**B. Does Flanagan's potential liability arise from or relate to his contacts with Texas?**

■ In *Moki Mac,* the Texas Supreme Court surveyed the different tests used by courts to analyze the "arise from or relate to" requirement that lies at the heart of specific jurisdiction. *Moki Mac,* 221 S.W.3d at 579–84. The court then adopted the "substantial-connection" test, which requires Texas courts to look for a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 584–85. We apply that test here.

The evidence shows that RBC's claim for contribution derives from a products-liability case in which the Wards allege that Microhydrin, containing Flanagan Microclusters, and Crystal Energy were inadequately labeled and negligently marketed. The evidence also shows that Flanagan must approve all labels and marketing of RBC's products containing his inventions Flanagan Microclusters and Crystal Energy. It further shows that Flanagan purposefully marketed his ingredients in Texas through his exclusive licensing agreement with RBC and his promotion of RBC's products containing those ingredients at sales meetings in Texas. And a few months after a business dispute ended the relationship between Flanagan Technologies and RBC, Flanagan personally [7] met with RBC in Texas to seek its business once again. We conclude the evidence is legally and factually sufficient to show that Flanagan's potential liability arises from or relates to his contacts with Texas.

**C. Does the exercise of jurisdiction over Flanagan comport with traditional notions of fair play and substantial justice?**

Flanagan also contends the trial court's exercise of personal jurisdiction over him

---

**7.** In his deposition, Flanagan testified that Flanagan Technologies ceased to exist in July

or August 2001 after the business dispute ended the relationship with RBC.

does not comport with traditional notions of fair play and substantial justice because (1) it would be burdensome for him to litigate in Texas; (2) Texas does not have more interest in adjudicating this dispute than Canada, California, or Arizona, "particularly since there is no pleading or proof that the Wards even purchased a product, relied on a misrepresentation, or sustained an injury in the state of Texas"; (3) granting Flanagan's special appearance does not affect the Wards' interest in convenient and effective relief because Flanagan's special appearance as to their claims has already been granted; (4) it is not more efficient to resolve this matter in Texas "in light of the multi-state location of the various parties"; and (5) this case does not implicate substantial social policies so as to justify jurisdiction in Texas.

■ Now that the minimum-contacts analysis encompasses so many fairness considerations, it has become less likely that the exercise of jurisdiction will fail a fair-play analysis. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.[8] *Guardian Royal*, 815 S.W.2d at 231.

We conclude the record shows that the exercise of jurisdiction over Flanagan does not offend traditional notions of fair play and substantial justice. First, according to his testimony, Flanagan has no permanent place of residence, and there is no evidence that it would be a greater burden on him to litigate in Texas as opposed to another jurisdiction. Second, although Texas's interest in adjudicating this dispute may not be as strong as in cases in which the plaintiff is from Texas and alleges injuries occurring in Texas, Texas nevertheless has an interest in litigating this dispute because RBC is a Texas corporation with its principal place of business in Texas. Third, trying RBC's third-party claims against Flanagan in the same lawsuit as the plaintiffs' claims against RBC is convenient and effective and will avoid the necessity of two separate trials. Fourth, personal jurisdiction over Flanagan in this case is supported by the interstate judicial system's interest in obtaining the most efficient resolution of controversies, because there is no better forum to adjudicate this dispute and it is most economical to try the plaintiffs' claims and RBC's third-party claims in the same case. Finally, the shared interest in furthering fundamental substantive social policy is promoted by the exercise of personal jurisdiction over Flanagan in this case because of his voluntary and purposeful contacts with the forum state in a case that arises from those contacts.

## CONCLUSION

Having concluded the exercise of specific jurisdiction over Flanagan is proper, we overrule his second and third issues. As a result, we do not need to address Flanagan's first issue concerning the exercise of general jurisdiction, or his fourth issue concerning whether the trial court improperly considered his consent to suit in a prior lawsuit with RBC as a separate basis for the exercise of jurisdiction. *See* Tex. R.App. P. 47.1.

We affirm the trial court's order.

---

**8.** The rare cases have generally been restricted to those involving international defendants. *See, e.g., Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113–15, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Guardian Royal*, 815 S.W.2d at 232–33; *Juarez v. UPS de Mexico S.A. de C.V.*, 933 S.W.2d 281, 286 (Tex.App.-Corpus Christi 1996, no writ).