Affirmed in Part, Reversed & Rendered in Part, and Opinion filed
April 9, 2009








Affirmed in
Part, Reversed & Rendered
in Part, and Opinion filed April 9, 2009.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00272-CV

____________

 

NOGLE & BLACK AVIATION, INC.
AND CHARLES JUDSON NOGLE, Appellants

 

V.

 

ANNA MARIA FAVERETTO AS NEXT FRIEND
OF ALEJANDRO MIGLIORI AND MARIANA MIGLIORI, MINORS, AND AMERICO MIGLIORI AS
ADMINISTRATOR OF THE ESTATE OF PEITRO FOSTER MIGLIORI, Appellees

 



 

On Appeal from the Probate
Court No. 1

Harris County, Texas

Trial Court Cause No. 364604-401

 



 

O P I N I O N

Appellants Nogle & Black Aviation, Inc. (AN&B@) and Charles
Judson Nogle appeal the trial court=s orders denying
their special appearances.  We conclude that the trial court lacked personal
jurisdiction over Nogle but properly exercised personal jurisdiction over
N&B.  Therefore, we affirm in part and reverse and render in part.  








                                                  BACKGROUND

Nogle, an Illinois resident, owns N&B, which is an
Illinois company in the business of performing maintenance, inspections, and
modifications on aircraft, primarily Beechcraft T-34 planes.  N&B built the
aircraft at issue in this case in 1990 and included a certain type of modified
wing spars.  N&B then sold the accident aircraft to a Georgia company later
that year.  In 1991, a T-34 with the same type of modified wing spars crashed. 
The Federal Aviation Administration (AFAA@) grounded the
altered T-34s and issued an airworthiness directive concerning T-34 wing spars,
which set forth criteria for correcting the unsafe condition so that an
aircraft could regain its airworthy status.  In response, N&B developed an
Alternative Means of Compliance (AAMOC@) with the
airworthiness directive.  If the FAA approves an AMOC, then an aircraft can
regain its airworthy status by complying with the AMOC rather than the criteria
in the airworthiness directive.  The FAA approved N&B=s AMOC, and the
accident aircraft as well as many other T-34s around the country complied with
the AMOC and resumed airworthy status.  The accident aircraft was later sold
again to a Texas entity known as PRVNY Pluk and operated by Texas Air Aces,
also a Texas entity.

In 2003, another T-34 crashed, and the FAA issued another
airworthiness directive concerning T-34 wing spars and grounded affected
aircraft.  N&B developed a second AMOC to address these concerns, which the
FAA approved, and the accident aircraft and other T-34s around the country
complied with this procedure and resumed airworthy status.  Several months
after the accident aircraft resumed airworthy status, Peitro Montgomery
Migliori was flying it as a student pilot when a wing broke off during flight,
causing a crash that killed him and the instructor pilot.  Mr. Migliori was a
Venezuelan citizen, and the crash occurred in Texas.

Appellees Anna Maria Faveretto as Next Friend of Alejandro
Migliori and Mariana Migliori, Minors, and Americo Migliori as Administrator of
the Estate of Peitro Foster Migliori (collectively Athe Miglioris@) sued Nogle and
N&B, among others, in Texas.  Nogle and N&B filed special appearances,
which the trial court denied.  They now appeal.








                                                      ANALYSIS

A. 
Legal Standard

Whether a trial court has personal jurisdiction over a
defendant is a question of law.  BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 794 (Tex. 2002); Schott Glas v. Adame, 178 S.W.3d 307,
312 (Tex. App.CHouston [14th Dist.] 2005, pet. denied).  When the
facts underlying the jurisdictional issue are undisputed, we review the trial
court=s determination de
novo.  Schott Glas, 178 S.W.3d at 312; see American Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 806 (Tex. 2002).  However, when
the relevant facts are disputed, a party may challenge the trial court=s underlying
conclusions for legal and factual sufficiency.  Schott Glas, 178 S.W.3d
at 312.  If the trial court does not issue findings of fact, we presume the
trial court resolved all factual disputes in favor of its judgment.  Id.  The
plaintiff bears the initial burden of pleading facts sufficient to establish
personal jurisdiction.  Marchand, 83 S.W.3d at 793; Schott Glas,
178 S.W.3d at 313.  The burden then shifts to the defendant challenging
personal jurisdiction to negate all bases of jurisdiction alleged by the
plaintiff.  Marchand, 83 S.W.3d at 793; Schott Glas, 178 S.W.3d
at 313.

The Texas long-arm statute governs Texas courts= exercise of
personal jurisdiction over a nonresident defendant.  See Tex. Civ. Prac. & Rem. Code Ann. '' 17.041B.045 (Vernon
2008); Schott Glas, 178 S.W.3d at 312.  The long-arm statute reaches as
far as federal constitutional due process will allow, and thus the long-arm
statute is satisfied if an assertion of personal jurisdiction comports with due
process.  See Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575
(Tex. 2007); Schott Glas, 178 S.W.3d at 312.  Personal jurisdiction is
proper when the nonresident defendant has established Aminimum contacts@ with the forum
and the exercise of jurisdiction comports with A>traditional
notions of fair play and substantial justice.=@  Moki Mac,
221 S.W.3d at 575 (quoting Int=l Shoe Co. v.
Washington, 326 U.S. 310, 316 (1945)). 








When analyzing personal jurisdiction, the touchstone of the
minimum contacts analysis is purposeful availmentCthe defendant=s contacts must
show that it purposefully availed itself of the privileges and protections of
the forum=s law to subject itself to jurisdiction there.  See
Michiana Easy Livin= Country, Inc. v.
Holten, 168 S.W.3d 777, 784B85 (Tex. 2005); see also Brocail
v. Anderson, 132 S.W.3d 552, 557 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied) (noting that A[t]he purposeful
availment requirement is a threshold@).  Any contacts
that do not amount to purposeful availment are irrelevant in the jurisdictional
analysis.  See Olympia Capital Assocs., L.P. v. Jackson, 247 S.W.3d 399,
406 (Tex. App.CDallas 2008, no pet.).  What is important is the
quality and nature of the defendant=s contacts with
the forum rather than the number of contacts.  American Type Culture, 83
S.W.3d at 806.

A defendant=s contacts can give rise to either general
or specific jurisdiction.  General jurisdiction is based on continuous and
systematic contacts with the forum.  Moki Mac, 221 S.W.3d at 575. 
Specific jurisdiction is based on purposeful contacts that give rise or relate
to the litigation.  Id. at 576.  The Miglioris allege the trial court
has specific jurisdiction over both Nogle and N&B and also general
jurisdiction over N&B.

B. 
Jurisdiction Over Nogle








In two issues, Nogle alleges the trial court improperly
exercised personal jurisdiction over him individually.  Nogle holds a
certification from the FAA that gives him authority to sign off on major repairs
or alterations on aircraft.  Such a sign off is necessary for a grounded
aircraft to regain airworthy status.  At the request of PRVNY Pluk and Texas
Air Aces, Nogle provided technical assistance over the telephone to the
mechanics working to make the accident aircraft compliant with the second
AMOC.  Nogle then signed off on the modification and mailed the certificate to
Texas.  The Miglioris claim these actions by Nogle individually are sufficient
to establish personal jurisdiction over him because Nogle knew the accident
aircraft was owned and operated in Texas, he mailed the certificate to Texas,
and without this certification, which the Miglioris claim relates to the
portion of the aircraft that failed in the crash, the accident aircraft would
not have been in the air.  We disagree.

In analyzing specific jurisdiction, we first determine
whether Nogle made minimum contacts with Texas by purposefully availing himself
of the privilege of conducting activities here.  See Moki Mac, 221
S.W.3d at 576.  Purposeful availment focuses on the defendant=s actions, not on
the actions of third parties.  Michiana Easy Livin=, 168 S.W.3d at
787; Olympia Capital Assocs., 247 S.W.3d at 416B17.  Nogle did not
advertise or otherwise target his services to Texas specifically.  See
Olympia Capital Assocs., 247 S.W.3d at 416; cf. Moki Mac, 221 S.W.3d
at 578B79.  His
technical support services to assist in implementing the second AMOC and his
services in signing off on repairs to comply with this AMOC were available to
all T-34 owners across the country.  It was PRVNY Pluk and Texas Air Aces=s request, not
Nogle=s initiative, that
led to Nogle providing his services regarding the accident aircraft, and such
contacts are insufficient to show purposeful availment.  See Olympia Capital
Assocs., 247 S.W.3d at 416B17 (providing bid to potential client at
client=s sole request is
not purposeful availment); Weldon-Francke v. Fisher, 237 S.W.3d 789, 797
(Tex. App.CHouston [14th Dist.] 2007, no pet.) (answering
questions and responding to requests is not purposeful availment).  This case
is similar to Michiana Easy Livin=, in which the
Texas Supreme Court held that a single sale to Texas that was initiated
completely by the buyer, when the seller did nothing to target Texas
specifically, did not establish purposeful availment of the laws and benefits
of Texas.  See Michiana Easy Livin=, 168 S.W.3d at
787.








Even though Nogle had a role in the chain of events that
put this Texas accident aircraft in the air before crashing in Texas, that is
not enough to establish purposeful availment.  See Michel v. Rocket Eng=g Corp., 45 S.W.3d 658,
671 (Tex. App.CFort Worth 2001, no pet.) (noting that a Ageneralized >but for= relationship
between the forum and a non‑resident defendant falls far short of meeting
the requirement for specific jurisdiction that the plaintiff's cause of action
must >relate to= or >arise out of= the non‑resident's
activities within the forum@).  We sustain Nogle=s third issue. 
Because we determine that Nogle did not purposefully avail himself of the
benefits of conducting activities in Texas, we need not consider his fourth
issue, in which he argues that the exercise of personal jurisdiction over him
would offend due process.

C.  Jurisdiction Over N&B

In two issues, N&B contends the trial court erred in
concluding it had personal jurisdiction over it, either based on specific or
general jurisdiction, and that exercising jurisdiction would violate
traditional notions of fair play and substantial justice.

1.  Minimum Contacts

Although the Miglioris base their specific jurisdiction
theory on many different contacts, we find specific jurisdiction is proper
based on N&B=s interactions with Victor Juarez. 
Juarez, a Texas resident, is an engineer.  He was paid to perform engineering
work regarding the design of an inspection procedure on the T-34 wing spar. 
N&B used Juarez=s work, which was performed in Texas, in
submitting its AMOC to the FAA for approval.  The FAA approved the AMOC, which
N&B then sold for profit to many T-34 owners.  In their petition, the
Miglioris allege, among other things, that N&B was negligent in its Adesign,
installation, and inspection of the wing spar.@








We first consider whether N&B=s contacts with
Juarez amount to purposeful availment.  Purposeful availment analysis considers
not only the conduct of the defendant, as opposed to the plaintiff or a third
party, but also whether those contacts were random or fortuitous and whether
the defendant benefitted from those contacts.  See Moki Mac, 221 S.W.3d
at 575.  We conclude that N&B=s relationship
with Juarez amounted to purposeful availment.  A contract with a Texas resident
alone does not show a purposeful contact with Texas.  See Ashdon, Inc. v.
Gary Brown & Assocs., 260 S.W.3d 101, 113 (Tex. App.CHouston [1st
Dist.] 2008, no pet.); Olympia Capital Assocs., 247 S.W.3d at 417. 
Other factors about the nature of the relationship are much more important,
such as the place of performance.  See Barnstone v. Congregation Am Echad,
574 F.2d 286, 288B89 (5th Cir. 1978) (noting that Ait is the place of
performance rather than execution, consummation or delivery which should govern
the determination of jurisdiction@ and holding that
plaintiff=s Aunilateral partial performance@ in Texas was
insufficient to establish jurisdiction); Ashdon, 260 S.W.3d at 113 (AGenerally, a
contract calling for performance outside of Texas does not subject a party to
jurisdiction here.@).  Juarez performed his engineering work
in Texas.  See Fleischer v. Coffey, 270 S.W.3d 334, 338 (Tex. App.CDallas 2008, no
pet.) (finding jurisdiction proper based in part on contract being performed in
Texas); cf. American Type Culture, 83 S.W.3d at 807B08 (no
jurisdiction, contract performed out of state); Olympia Capital Assocs.,
247 S.W.3d at 417B18 (same).








Furthermore, unlike Nogle=s technical
assistance, this relationship was not unilaterally initiated by the Texas
resident.  Cf. Michiana Easy Livin=, 168 S.W.3d at
787.  N&B specifically chose Juarez among other possible candidates because
it liked his work the best.  The doctrine of purposeful availment recognizes
that a defendant can make choices to avoid benefitting from activities in
Texas.  See Moki Mac, 221 S.W.3d at 575; Michiana Easy Livin=, 168 S.W.3d at
785.  Even though N&B may have made some such choices, such as not locating
any employees or offices in Texas and not targeting the Texas market, it
specifically chose to use the work of this Texas resident. That work was
performed in Texas, N&B used it in completing its AMOC, and N&B made
money doing so when it sold the AMOC to T-34 owners.  It is not unreasonable to
expect that the choice to use a Texas engineer doing work in Texas to assist
with the design of a wing spar modification could lead to litigation in Texas
for a claim relating to a wing spar failure.  See GJP, Inc. v. Ghosh,
251 S.W.3d 854, 880B81 (Tex. App.CAustin 2008, no pet.)
(noting nonresident defendants controlled whether transaction occurred in Texas
and that Ait is not unreasonable or unexpected that they might
be hailed into court here in regard to claims arising from that activity@).  For these
reasons, we conclude N&B=s use of Juarez=s services amounts
to purposeful contact with Texas.[1]

Having concluded that N&B=s use of Juarez=s services
amounted to purposeful contact, we now consider whether the litigation arises
from or relates to that contact.  See Moki Mac, 221 S.W.3d at 576.  In
making this determination, we focus on relationship among the defendant, Texas,
and the litigation.  Id. at 575B76.  To support an
exercise of specific jurisdiction, there must be a substantial connection
between a nonresident defendant=s forum contacts and the operative facts
of the litigation.  Id. at 585.  The issue of whether negligence in the
design and inspection of the wing spar modification in the AMOC caused the wing
separation on the accident aircraft is an operative fact in this litigation,
and Juarez=s engineering work is directly related to that.  See
Retamco Operating, Inc. v. Republic Drilling Co., No. 07-0599, __ S.W.3d
__, 2009 WL 490063, at *5 (Tex. Feb. 27, 2009) (finding personal jurisdiction
and stating, in litigation over unpaid royalties, that the Texas real property
itself Awill also be an
operative fact, or at the very least, will have a substantial connection to the
operative facts@).








N&B asserts that Juarez=s work is
irrelevant because there is no evidence to show N&B actually worked on the
part of the accident aircraft that failed.  Nogle states in an affidavit that
the AMOC-related modifications to the accident aircraft were applicable only to
the wing spars and that the wing=s center section,
rather than its spars, failed on the accident aircraft.  In their petition, the
Miglioris allege negligence against N&B in causing the crash, based in part
on its alleged negligent design, installation, and inspection of the wing
spars.[2] 
Whether N&B actually was negligent regarding the wing spars and whether a
problem with the wing spars actually caused the crash are merits-based
questions that should not be resolved in a special appearance.  See Pulmosan
Safety Equip. Corp. v. Lamb, 273 S.W.3d 829, 839 (Tex. App.CHouston [14th
Dist.] 2008, pet. filed); Kelly v. Gen. Interior Constr., Inc., 262
S.W.3d 79, 86 (Tex. App.CHouston [14th Dist.] 2008, pet. filed); see
also Moki Mac, 221 S.W.3d at 582 (declining to adopt jurisdiction rule that
Awould require a
court to delve into the merits to determine whether a jurisdictional fact is
actually a legal cause of the injury@); Michiana
Easy Livin=, 168 S.W.3d at 790 (rejecting
jurisdiction theory that would Aconfuse[] the roles of judge and jury by
equating the jurisdictional inquiry with the underlying merits@).  We take the
allegations in the petition as true at the special appearance stage.  Pulmosan
Safety, 273 S.W.3d at 839; Flanagan v. Royal Body Care, Inc., 232
S.W.3d 369, 377 (Tex. App.CDallas 2007, pet. denied).  For jurisdictional
purposes, Nogle=s affidavit at most creates a fact issue
regarding the allegations in the petition, and that is sufficient to support
the trial court=s determination that it had jurisdiction
over N&B based on the connection between the AMOC and the accident.  See
Pulmosan Safety, 273 S.W.3d at 839; Kelly, 262 S.W.3d at 86; Flanagan,
232 S.W.3d at 377.

Because we conclude that N&B had purposeful contacts
with Texas through its relationship with Juarez and those contacts are
substantially connected to the operative facts of the litigation, we conclude
the trial court properly determined that it had specific jurisdiction over
N&B.  Thus, we overrule N&B=s first issue.








2.  Fair Play and Substantial Justice

N&B argues that even if it had sufficient purposeful
contacts to establish specific jurisdiction, the trial court erred in
exercising jurisdiction because doing so violates traditional notions of fair
play and substantial justice.  In making this determination, we consider (1)
the burden on the defendant, (2) the interests of the forum state in adjudicating
the dispute, (3) the plaintiff=s interest in obtaining convenient and
effective relief, (4) the interstate judicial system=s interest in
obtaining the most efficient resolution of controversies, and (5) the shared
interests of the several states in furthering fundamental substantive social
policies.  Retamco Operating, 2009 WL 490063, at *5.  Only in rare cases
will the exercise of personal jurisdiction fail to comport with fair play and
substantial justice.  Id.








N&B argues that forcing it to defend litigation in
Texas would be unduly burdensome because it is an Illinois resident without
employees or offices in Texas.  N&B asserts that Texas has only a minimal
interest in the litigation because the Miglioris are from Venezuela rather than
Texas and the crash could have happened anywhere.  Finally, N&B contends
the Miglioris can obtain relief against N&B in Illinois, where all of
N&B=s employees and
witnesses are located.  After considering the relevant factors, we easily
determine that the exercise of jurisdiction here is consistent with due
process.  N&B will certainly incur more expense to defend litigation in
Texas as opposed to its home state, but that would be true for virtually any
nonresident defendant.  See id.  Distance to travel is usually not a
significant consideration with the ease of modern transportation.  Glencoe
Capital Partners II, L.P. v. Gernsbacher, 269 S.W.3d 157, 168 (Tex. App.CFort Worth 2008,
no pet.).  That is particularly true in this case as N&B has several
aircraft at its disposal.  Texas does have an interest in the litigation
because the owner and operator of the accident aircraft are Texas entities, the
crash was in Texas, a Texas resident helped design part of the accident
aircraft that is alleged to have failed, the instructor pilot who died was a
Texas resident, and Migliori=s estate administration is pending in
Texas.  See Kelly, 262 S.W.3d at 87; Flanagan, 232 S.W.3d at
378.  The crash litigation involves multiple defendants, and forcing the
Miglioris to litigate the plane crash both in Texas and in Illinois is costly
and inconvenient for them as well as the witnesses and parties in Texas and is
a waste of judicial resources.  See Kelley, 262 S.W.3d at 87; Control
Solutions, Inc. v. Gharda Chems. Ltd., 245 S.W.3d 550, 562 (Tex. App.CHouston [1st
Dist.] 2007, no pet.).

This is not one of the rare cases when exercising personal
jurisdiction would violate traditional notions of fair play and substantial
justice.  We overrule N&B=s second issue.

                                                   CONCLUSION

We hold that the trial court properly exercised personal
jurisdiction over N&B but that it erred in exercising personal jurisdiction
over Nogle.  Accordingly, we affirm the trial court=s judgment as to
N&B and reverse the trial court=s judgment as to
Nogle and render judgment that the Miglioris= claims against
Nogle be dismissed for lack of personal jurisdiction.

 

 

 

 

/s/      Leslie B. Yates

Justice

 

 

 

 

Panel consists of
Justices Yates, Seymore, and Boyce.









[1]  Even though it cites personal jurisdiction case law
regarding the effects of contracts with Texas residents, N&B also asserts
in its brief that there is no evidence of an actual contract with Juarez. 
Nogle=s deposition testimony shows that Juarez was paid for
performing engineering work, which N&B used in developing the AMOC and
submitting it to the FAA.  Thus, even if N&B did not have a contract with
Juarez, it had a substantial relationship where it knowingly used his work,
which was performed in Texas, to develop its AMOC.





[2]  The causation evidence in the court=s record is thin.  We have not been presented with
even the crash report, much less expert testimony.  We have only the allegations
in the petition and Nogle=s affidavit.  At oral argument, the Miglioris
complained that they were limited to jurisdictional discovery and thus could
not conduct discovery on causation.  By focusing on the operative facts of the
litigation, Moki Mac would seem to suggest that some level of discovery
regarding causation could be jurisdictional discovery when the contacts the
plaintiff alleges supports jurisdiction relate to causation.  However, we need
not resolve this issue because the Miglioris raised no appellate issue
regarding any improper limitations on discovery.  See Walling v. Metcalfe,
863 S.W.2d 56, 58 (Tex. 1993).