ACCEPTED
05-17-01332-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
6/4/2018 3:43 PM
LISA MATZ
CLERK

IN THE
COURT OF APPEALS
FIFTH COURT OF APPEALS DISTRICT
DALLAS, TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
6/4/2018 3:43:39 PM
LISA MATZ
Clerk

NO. 05-17-01332-CV

JACK CRAIG EFFEL, *Appellant,*

vs.

ROBERT G. ROSBERG, *Appellee.*

Interlocutory Appeal from the County Court at Law No. 5
of Dallas County, Texas
Hon. Mark Greenberg, presiding

BRIEF FOR APPELLEE

Charles W. McGarry
Texas Bar No. 13610650
LAW OFFICE OF CHARLES McGARRY
701 Commerce Street, Suite 400
Dallas, Texas  75202
 (214) 748-0800
(214) 748-9449 fax
cmcgarry@ix.netcom.com

ATTORNEY FOR APPELLEE

# TABLE OF CONTENTS

Page

INDEX OF AUTHORITIES ................................................................................. ii

STATEMENT REGARDING ORAL ARGUMENT ……………….…….....…… iv

ISSUES PRESENTED ...................................................................................... iv

THE RECORD ON APPEAL ............................................................................ iv

STATEMENT OF FACTS .................................................................................. 1

SUMMARY OF THE ARGUMENT ................................................................ 3

ARGUMENTS AND AUTHORITIES

    The Trial Court Correctly Denied Jack Effel's Special Appearance
    Because His Contacts With Texas Justified the Exercise of Both
    Specific and General Jurisdiction. ……………………….…………… 4

PRAYER ......................................................................................................... 11

CERTIFICATE OF SERVICE ...................................................................... 12

CERTIFICATE OF COMPLIANCE ……………………………………… 13

# INDEX OF AUTHORITIES

CASES                                                           PAGE

*Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801 (Tex. 2002) ………… 4

*BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789 (Tex. 2002) …………. 4

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ………………………… 6

*Coastal Transp. Co., Inc. v. Crown Cent. Petro Corp.,*
    136 S.W.3d 227 (Tex. 2004) …………………………….…….. 9

*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) …………………………….. 10

*Flanagan v. Royal Body Care, Inc.,* 232 S.W.3d 369
    (Tex. App.—Dallas 2007, pet. denied) …………………………….. 1

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011) ..…….. 10

*Guardian Royal Exch. Assurance Ltd. v English China Clays, P.L.C.,*
    815 S.W.2d 223 (Tex. 1991) …………………………….……… 6, 7

*Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199 (Tex. 1985) ………..……… 7

*Kelly v. General Interior Constr., Inc.,* 301 S.W.3d 653 (Tex. 2010) …………….. 7

*McKanna v. Edgar*, 388 S.W.2d 927 (Tex. 1965) …………………...………… 7

*Northern Frac Proppants, II, LLC v. 2011 NF Holdings, LLC,*
    2017 Tex. App. LEXIS 7100 (Tex. App. – Dallas 2017, no pet.) ………… 1

*Retamco Operating, Inc. v. Republic Drilling Co.,*
    278 S.W.3d 333 (Tex. 2009) …………………………………… 9

*Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950) ………………. 5

*Searcy v. Parex Res., Inc.,* 496 S.W.3d 58 (Tex. 2016) …………………………. 10

*U-Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760 (Tex. 1977),
    *cert. denied*, 434 U.S. 1063 (1978) …………………………...……… 5

*Wayne Lensing & Lefthander Mktg. v. Card,* 417 S.W.3d 152
    (Tex. App. – Dallas 2013, no pet.) …………………...……………….. 8

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980) ……………………. 6

Other Authorities

TEX. CIV. PRAC. & REM. CODE §17.041 et seq …………………………………… 5, 6

TEX. PROP. CODE §5.072 ………………………………………………………… 11

TEX. PROP. CODE §41.002(a) …………………………………………………… 10

TEX. R. CIV. P. 120a ………..…………………………………………………… 2

TEX. R. CIV. P. 201 ……………………………………………………………… 3, 10

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has not requested oral argument and the case does not require it. However, should appellant later request oral argument, appellee reserves the right to present argument in response.

## ISSUES PRESENTED

**1. The Trial Court Correctly Denied Jack Effel's Special Appearance Because His Contacts With Texas Justified the Exercise of Both Specific and General Jurisdiction.**

## THE RECORD ON APPEAL

The record on appeal consists a Reporter's Record in one volume, (cited as "RR __"), including two exhibits. (cited as "DX ___"), a Clerk's Record in one volume (cited as "CR__") and a Supplemental Clerk's Record in one volume (cited as "SCR ___").

_____

NO. 05-17-01332-CV

_____

JACK CRAIG EFFEL, *Appellant,*

vs.

ROBERT G. ROSBERG, *Appellee.*

_____

Interlocutory Appeal from the County Court at Law No. 5
of Dallas County, Texas
Hon. Mark Greenberg, presiding

_____

**BRIEF FOR APPELLEE**

_____

TO THE HONORABLE COURT OF APPEALS:

Appellee Robert G. Rosberg respectfully submits this brief in support of the

trial court's order denying appellant's special appearance.

## STATEMENT OF FACTS

The "facts" in a special appearance include the factual allegations made by

the plaintiff in his petition and in his response to the defendant's special

appearance, *Flanagan v. Royal Body Care, Inc.,* 232 S.W.3d 369, 374 (Tex.

App.—Dallas 2007, pet. denied); *Northern Frac Proppants, II, LLC v. 2011 NF*

*Holdings, LLC*, 2017 Tex. App. LEXIS 7100 (Tex. App. – Dallas 2017, no pet), as well as the evidence heard by the trial court at the hearing on the defendant's special appearance. TEX. R. CIV. P. 120a (3).

The plaintiff alleged in this case that, after he had obtained a money judgment against Lena Effel, her nephew Jack Effel removed her from Texas and brought her to live with him in Las Vegas. At the same time, he assumed control of her assets and moved them from Texas to Las Vegas. (CR 18-9).

The plaintiff also alleged that Jack Effel co-owned a home in Dallas County, Texas, and was claiming a homestead exemption on the home. (CR 20).

Jack Effel's Special Appearance was accompanied by his affidavit. He stated in his affidavit that he "claimed no interest" in the house he was alleged to own. He also stated, in conclusory fashion, that he does "not conduct any business in Texas" and has "not committed a tort in whole or in part in the State of Texas." (CR 14). However, he never denies the allegation that he took custody of Lena Effel's assets and removed them from Texas.

At the hearing on Jack Effel's special appearance, the plaintiff introduced evidence that Jack and Henry Effel co-own a residential property in Dallas and claim it as a homestead. (RR 8, D. Ex. 1, 2). Jack Effel never testified or

introduced any evidence[1]. (RR 4-8). In his brief, he denies that the property is his homestead (Appellant's Brief, p. 6), but he never made that denial in the trial court.

Additionally, this Court may take judicial notice of the fact that the address Jack Effel is using for this litigation, 3700 West Flamingo Road, Las Vegas, Nevada 89103, is the address of the Rio Hotel. https://www.caesars.com/rio-las-vegas TEX. R. CIV. P. 201.

Appendices B and C to Appellant's Brief are from the original case against Lena Effel and are not part of the record in this case.

## SUMMARY OF THE ARGUMENT

The trial court correctly denied Jack Effel's special appearance. Allegations that Jack Effel acted in Texas to remove property from Texas to Las Vegas and that the removal of the property constituted a fraudulent transfer is sufficient to establish specific jurisdiction, and Jack Effel did not even controvert, much less negate, these allegations. His affidavit statements that he "did no business" and "committed no tort" in Texas were wholly conclusory.

Allegations that Jack Effel owned a homestead in Dallas County is sufficient to establish general jurisdiction. Jack's affidavit statement that he "claims no interest" in the home was controverted by evidence introduced at the special

---

[1] Although Effel claims in his brief to have testified at the hearing, the record shows that he was never sworn in and that the court had invited him to "argue" his case when he spoke. (RR 4).

appearance hearing showing that he does indeed own a home in Dallas County and was claiming a homestead exemption. Jack's statement that he "claims no interest" in the house is both conclusory and ineffective under the statute of frauds to remove his name from the title to the house.

**ARGUMENTS AND AUTHORITIES**

**1. The Trial Court Correctly Denied Jack Effel's Special Appearance Because His Contacts With Texas Justified the Exercise of Both Specific and General Jurisdiction.**

I. STANDARD OF REVIEW

Whether a court has personal jurisdiction over a defendant is a question of law. But in resolving this question of law, the trial court must frequently resolve questions of fact. On appeal, the trial court's determination to grant or deny a special appearance is subject to *de novo* review, but appellate courts may be called upon to review the trial court's resolution of a factual dispute. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *BMC Software*, 83 S.W.3d at 794. When the trial court does not issue findings of fact, reviewing courts should presume that the trial court resolved all factual disputes in favor of

its judgment. *Coleman*, 83 S.W.3d at 806. When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software*, 83 S.W.3d at 795. Where the appellant fails to challenge the factual sufficiency of the evidence, this Court must determine only whether some evidence supports the judgment and these implied findings of fact; in such a legal sufficiency review "it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature." *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 513, 235 S.W.2d 609, 613 (1950).

In this case, no findings of fact were made by the trial court. This Court must therefore presume that the trial court resolved all factual disputes in favor of exercising jurisdiction. Because the appellant has not challenged the factual sufficiency of the evidence in support of the presumed findings, this Court may only conduct a legal sufficiency review and must consider only that evidence which supports the exercise of jurisdiction.

II. GENERAL AND SPECIFIC JURISDICTION

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE §§ 17.041-.045. Jurisdiction under the Texas long-arm statute reaches as far as the federal

constitutional requirements of due process will permit. *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760 (Tex. 1977), *cert. denied*, 434 U.S. 1063, 55 L. Ed. 2d 763, 98 S. Ct. 1235 (1978). Due process imposes two requirements: (1) the nonresident defendant must have purposely established "minimum contacts" with the forum state; and (2) the exercise of jurisdiction must comport with "fair play and substantial justice." *Guardian Royal Exch. Assurance Ltd. v English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

The minimum-contacts analysis requires that a defendant "purposefully avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980). A defendant is not subject to jurisdiction here if its Texas contacts are random, fortuitous, or attenuated. *See Guardian*, 815 S.W.2d at 226. Nor can a defendant be haled into a Texas court for the unilateral acts of a third party. *Id.* It is the quality and nature of the defendant's contacts, rather than their number, that is important to the minimum-contacts analysis. *Id.* at 230 n.11.  The Texas long-arm statute permits the exercise of jurisdiction over a

defendant who commits a tort in whole or in part in Texas. *See* TEX. CIV. PRAC. & REM. CODE §17.042.

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. *See Guardian*, 815 S.W.2d at 227. General jurisdiction allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Id.* at 228. General jurisdiction is present when a defendant's contacts with a forum are "continuous and systematic," a more demanding minimum-contacts analysis than specific jurisdiction. *Id.*

## III. THE BURDEN OF PROOF

The plaintiff bears the initial burden of pleading allegations sufficient to bring a nonresident defendant within the provisions of the long-arm statute. *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965). But upon filing a special appearance, the nonresident defendant assumes the burden to negate all the bases of personal jurisdiction alleged by the plaintiff. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). The defendant can do this: (i) factually, by presenting evidence establishing that its Texas contacts are insufficient and thus

effectively disproving the plaintiff's allegations, or (ii) legally, by showing that even if the plaintiff's alleged facts are true they are legally insufficient to support jurisdiction. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010).

Appellant erroneously argues that the plaintiff had the burden of proving jurisdiction, and that he failed to satisfy that burden. (Appellant's Brief, p. 16). He never claims to have negated anything.

## IV. JACK EFFEL FAILED TO NEGATE THE FACTS ESTABLISHING SPECIFIC JURISDICTION

The plaintiff alleged in this case that, after he had obtained a money judgment against Lena Effel, her nephew Jack Effel removed Lena from Texas and brought her to live with him in Las Vegas. At the same time, Jack assumed control of Lena's assets and moved them from Texas to Las Vegas. (CR 18-9). Plaintiff specifically alleged that Jack Effel had an agreement with his brother Henry to transfer Lena's assets and that Jack performed his part of the agreement in Texas. (CR 20). Plaintiff alleged that the Jack's taking Lena's assets left Lena insolvent and that the transfer was fraudulent as to her creditors, including the plaintiff. (CR 19-20).

These allegations are sufficient to establish specific jurisdiction over Jack Effel. This Court has previously held that a non-resident who comes to Texas and removes property to his home state purposefully availed himself of Texas for

purposes of resulting conversion and civil theft claims. *Wayne Lensing &
Lefthander Mktg. v. Card*, 417 S.W.3d 152, 158-61 (Tex. App. – Dallas 2013, no
pet.). It should be no different for a fraudulent transfer claim arising out of the
removal of property.

The Supreme Court has even more broadly held that a nonresident who,
without physically entering the State, acquires Texas property purposefully availed
itself of Texas for purposes of a fraudulent transfer claim arising from the transfer.
*Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339-40 (Tex.
2009).

Jack Effel never attempted to negate these allegations, either in his affidavit
or by testifying at the special appearance hearing. The global assertions in his
affidavit that he does "not conduct any business in Texas" and has "not committed
a tort in whole or in part in the State of Texas" (CR 14) are clearly conclusory and
constitute no evidence. *See Coastal Transp. Co., Inc. v. Crown Cent. Petro Corp.*,
136 S.W.3d 227, 233 (Tex. 2004) (conclusory statements are no evidence). He
never denied taking control of Lena's assets in Texas and removing them to Las
Vegas.

There is legally sufficient evidence to support an implied finding that Jack
Effel failed to negate the claim that he fraudulently transferred property from

Texas to himself in Las Vegas. The trial court properly denied his special appearance on this basis.

## V. JACK EFFEL FAILED TO NEGATE THE FACTS ESTABLISHING GENERAL JURISDICTION

The plaintiff also alleged that Jack Effel co-owned a home in Dallas County, Texas, and was claiming a homestead exemption on the home. (CR 20). Jack Effel's affidavit states simply that he "claims no interest" in the home. (CR 14). However, at the special appearance hearing, the plaintiff introduced evidence from the Dallas County Tax Assessor showing that Jack Effel had indeed claimed a homestead exemption on property he co-owned in Dallas County, Texas. (RR 8. D. Ex. 1, 2). Jack Effel did not testify or otherwise introduce any evidence in an attempt to negate it.

A homestead must be used as a home. TEX. PROP. CODE §41.002(a). Owning a home in the forum state is the very epitome of having "continuous and systematic" contacts. Both the Texas and U.S. Supreme Courts have said that the test for general jurisdiction is whether the defendant's "affiliations with the state are so continuous and systematic as to render it essentially at home in the forum state." *Searcy v. Parex Res., Inc.,* 496 S.W.3d 58, 72 (Tex. 2016) *citing Daimler AG v. Bauman*, 134 S.Ct. 746, 761, 187 L. Ed. 2d 624 (2014) *and Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011).

Additionally, this Court may take judicial notice of the fact that the address Jack Effel is using for this litigation, 3700 West Flamingo Road, Las Vegas, Nevada 89103, is the address of the Rio Hotel. https://www.caesars.com/rio-las-vegas TEX. R. CIV. P. 201. The house in Dallas County is the only home that the evidence shows is owned by Jack Effel.

The trial court received evidence at the special appearance hearing, but Jack Effel never testified or otherwise attempt to negate these allegations. His attempt to simply disclaim any interest in the Dallas County homestead in his pleadings is ineffective to convey his interest in the property. TEX. PROP. CODE §5.072 (conveyance of property must be in writing). They also contradict the county records that are conclusive on the subject.

There is legally sufficient evidence to support an implied finding that Jack Effel failed to negate the claim that he claimed a homestead on real property he owns in Dallas County, Texas. The trial court also properly denied his special appearance on this basis.

WHEREFORE, PREMISES CONSIDERED, appellee prays that this Court affirm the trial court's order denying appellant's special appearance, and that he have and recover his costs of court and all further relief, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

LAW OFFICE OF CHARLES McGARRY

*/s/ Charles W. McGarry*

_____
Charles W. McGarry
Texas Bar No. 13610650
701 Commerce Street, Suite 400
Dallas, Texas  75202
(214) 748-0800
(214) 748-9449 fax
cmcgarry@ix.netcom.com

ATTORNEY FOR APPELLEE


CERTIFICATE OF SERVICE

This is to certify that on this 4th day of June, 2018, a true and correct copy of

the foregoing brief was delivered to the following party in accordance with the

Texas Rules of Appellate Procedure:

Jack C. Effel
3700 West Flamingo Road.
Las Vegas, Nevada 89103

*/s/ Charles W. McGarry*

_____
Charles W. McGarry

<u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that I prepared the foregoing brief using Microsoft Word 2010® software, a 14-point Times New Roman font for all text and a 12-point Times New Roman font for any footnotes. According to that program's word-count function, the sections covered by TRAP 9.4(i)(1) contain 2,341 words, including footnotes.

<u>*/s/ Charles W. McGarry*</u>
Charles W. McGarry